[Civ. No. 2829. First Appellate District, Division One.—June 26, 1919.]

AGNES ELLIOTT, Appellant, v. JOHN O. McINTOSH et al., Respondents.

[1] HIGHWAYS—PLATTING OF LAND AND RECORDING OF MAP—OFFER OF DEDICATION—EFFECT OF ACCEPTANCE.—When the owner of a tract of land plats it upon a map, designating certain portions as public streets or highways, and thereafter records the map, he is deemed to have thereby made an offer to dedicate the indicated streets to the public for highway purposes, and if such dedication is accepted, it thereupon becomes irrevocable.

1. Reservation of land on map or plat for specified purpose as dedication thereof to public, note, Ann. Cas. 1916D, 178.

[2] ID.—EFFECT OF DEDICATION—TITLE.—The owner of the land does not by such dedication alone part with the title to the land designated as streets, but grants to the public an easement for highway purposes. Upon the failure to accept the offer of dedication the easement expires, and the full title reverts to the owner of the adjoining land.

[3] ID.—FILING OF MAP NOT ACCEPTANCE.—The mere filing of a map designating certain portions of the tract as streets does not constitute an acceptance.

[4] ID.—TIME FOR ACCEPTANCE.—Acceptance of the offer of dedication must be evidenced within a reasonable time after the offer, and if this is not done, the owner may resume possession, and thereby revoke his offer.

[5] ID.—MANNER OF ACCEPTANCE.—The acceptance of an offer of dedication may be either actual or implied. It may be done by the formal act of the public authorities having jurisdiction over the premises, or it may be done by the use on the part of the public for such a length of time as will evidence its intention to accept the dedication.

[6] ID.—SALE OF LOTS — REFERENCE TO MAP — PRESUMPTION.—If an owner, having recorded a map designating certain portions of the tract as streets, sells the lots designated thereon by specific reference to such map, he is presumed to have made an irrevocable dedication of the streets, which dedication thereby becomes accepted by use of the public.

[7] ID.—SALE BY REFERENCE TO MAP—DEDICATION—ACCEPTANCE—ESTOPPEL—TITLE TO STREET.—If lots are sold by number and not by metes and bounds, reference being made to such a map, the original dedicator is estopped to deny that the portions designated as streets on the map were not in fact dedicated or accepted. Furthermore, conveyances of such a character carry title to the center of the street, provided the portion claimed as a street is such in fact.

[8] ID.—REVERSION OF LAND TO DEDICATOR—TITLE OF CONTIGUOUS OWNER.—Where land dedicated to the public for highway purposes has reverted to the owner due to the fact that it was not accepted, either actually or impliedly, the purchaser of a tract of land contiguous thereto does not acquire title to the center of such street.

[9] ID.—EJECTMENT—POSSESSION AS BASIS OF ACTION.—A person who for more than twenty-nine years has been in actual prior and lawful possession of such land which had reverted to the original owner, as against the purchaser of the tract of land con-

5. Implied acceptance, by public user, of land dedicated to public use, note, 3 Ann. Cas. 792.

8. What causes reverter after dedication, note, 1 Ann. Cas. 455.

tiguous thereto, may maintain an action in ejectment against the latter, who has ousted him from such possession.

[10] ID.—FAILURE TO PAY TAXES—EFFECT ON CLAIM OF ADVERSE POSSESSION.—The failure to pay taxes where none are levied does not defeat a claim of adverse possession.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge. Reversed.

The facts are stated in the opinion of the court.

Clarence N. Riggins and Wallace Rutherford for Appellant.

H. L. Johnston, L. E. Johnston, Nathan F. Coombs and Frank L. Coombs for Respondents.

NOURSE, J., *pro tem.*—Appeal from a judgment in favor of defendants in an action by plaintiff to eject defendants from a strip of land lying between the lands of the parties hereto, and being a portion of what was formerly laid out on a map as a street, but which was never accepted or opened for travel. The said tract was platted in 1873 and lots sold therein to predecessors of the parties hereto, Samuel Elliott, the husband of appellant, having acquired his title in October, 1883, the defendants having acquired theirs in May, 1917, just prior to the commencement of this action.

Samuel Elliott, the husband and immediate predecessor in interest of the appellant, planted the lots which he thus acquired in an orchard, which orchard extended over the lines of the disputed street, as indicated upon the map of the tract, and up to a fence which was built by one Riordan, a lessor of respondents' predecessor, as early as 1906. All of the land here in dispute was planted in orchard and cultivated by Samuel Elliott for at least twenty-nine years before the action was commenced. The fence erected in 1906, apparently with the consent and approval of appellant and her predecessor, marked the line of their cultivation and occupancy from that date until it was torn down ten years later by Morgan, the immediate predecessor of respondents. When this fence was torn down, in 1916, a new fence was erected by Morgan on the center line of

what appeared on the map as Cedar Street, over the objection of appellant. The strip between the old fence erected by Riordan in 1906 and the fence erected by Morgan in 1916 is about twenty-two feet wide and includes one row of orchard trees planted by Elliott. On May 22, 1917, Morgan conveyed lots 2 and 3 of block B to respondents, and they continued the fence erected by Morgan, and claimed title to the premises on the theory that their deed to the lots carried their title to the center of the street.

As far as respondents' case is concerned, the only evidence of title produced by them is their deed from Morgan, dated May 22, 1917. This deed does not purport to convey any right to the disputed land, but covers the two adjoining lots only. Thus the only claim of title on the part of respondents is based upon the theory that the conveyance by lot number with reference to the recorded map carries title to the center of the street. In order that this may be so it is necessary that there be first a valid dedication and acceptance of the street. The only evidence of dedication is the record of the map filed in 1873. It is conceded that there was no formal acceptance and no user.

[1] When an owner of a tract of land plats it upon a map, designating certain portions as public streets or highways, and thereafter records the map, he is deemed to have thereby made an offer to dedicate the indicated streets to the public for highway purposes. If such dedication is accepted, it thereupon becomes irrevocable. [2] By such dedication alone he does not part with the title to the land designated as streets, but grants to the public an easement only for highway purposes. Upon the failure to accept the offer of dedication the easement expires, and the full title reverts to the owner of the adjoining land.

[3] The mere filing of a map designating certain portions of the tract as streets does not constitute an acceptance. (*Hayward* v. *Manzer,* 70 Cal. 476, 480, [13 Pac. 141]; *Niles* v. *Los Angeles,* 125 Cal. 572, 577, [58 Pac. 190].) [4] Acceptance of the offer of dedication must be evidenced within a reasonable time after the offer, and if this is not done, the owner may resume possession, and thereby revoke his offer. (*Niles* v. *Los Angeles, supra.*) [5] Such acceptance may be either actual or implied. It may be done by the formal act of the public authorities having jurisdiction over the premises. It may be done by

the use on the part of the public for such a length of time as will evidence its intention to accept the dedication. (*Hayward* v. *Manzer, supra.*)  [6]  Again, if an owner, having recorded such a map, sells the lots designated thereon by specific reference to such map, he is presumed to have made an irrevocable dedication of the streets, which dedication thereby becomes accepted by use of the public. (*San Leandro* v. *Le Breton,* 72 Cal. 170, 175, [13 Pac. 405]; *Berton* v. *All Persons,* 176 Cal. 610, 615, [170 Pac. 151]; *Davidow* v. *Griswold,* 23 Cal. App. 188, 192, [137 Pac. 619].)

[7]  Proceeding from this proposition it must follow that if lots are sold by number and not by metes and bounds, reference being made to such a map, the original dedicator is estopped to deny that the portions designated as streets on the map were not in fact dedicated or accepted. Furthermore, conveyances of such a character carry title to the center of the street. (*Colgrove Water Co.* v. *Hollywood,* 151 Cal. 426, 431, [13 L. R. A. (N. S.) 904, 90 Pac. 1053]; Civ. Code, sec. 1112.)  But this, of course, is not the case if the portion claimed as a street is not such in fact. (*Sanchez* v. *Grace Methodist Church,* 114 Cal. 295, 299, [46 Pac. 2].)

[8]  In the case at bar it is conceded that Cedar Street was never accepted by the county and was never opened or used as a public street or highway.  The record fails to disclose any conveyance on the part of the dedicator of the lots delineated on the map which would effect an implied acceptance under the rule of the San Leandro case, *supra.* Certain deeds were offered in evidence showing conveyances by predecessors of the parties to this litigation, and such deeds refer to the lots shown upon the map filed in 1873; but it does not appear that Cedar Street was not abandoned long prior to their execution.  The admitted fact that the street was never formally accepted and never opened or used as a highway supports the presumption that it was never even impliedly accepted, and that the land so designated as Cedar Street had fully reverted to the owner before any of these deeds were executed.

Such being the case, the respondents cannot claim that by the deed of May 22, 1917, they procured title to the center of the street.  This deed, therefore, was not relevant to the issues, as it did not cover the property in suit, and the trial

court should have sustained the objection to its introduction in evidence. This leaves the respondents as mere trespassers without any color of title or right to possession.

As the title to the land embraced within the lines of Cedar Street reverted to the original dedicator upon failure to accept his offer of dedication, the question remains whether appellant obtained any title or right to possession which would entitle her to maintain this action. She urges in support of her claim actual possession as sufficient against anyone who cannot show a better right, and adverse possession for over five years by herself and her predecessor.

[9] It is not disputed that appellant, with her husband, was in actual possession of the premises for more than twenty-nine years and until ousted by the immediate predecessor of respondents in September, 1916. During all this time the premises had been occupied and cultivated by Elliott. As respondents had no record title, but were mere trespassers, there is no evidence to support the finding of the trial court that they were the owners and entitled to the possession. As against them, appellant was in actual prior and lawful possession, and thus entitled to maintain this action. "Where neither party relies upon a paper title, prior actual possession is sufficient to support an action in ejectment." (*Hart* v. *Cox*, 171 Cal. 364, 367, [153 Pac. 391, 392].) Respondents having failed to show any right, judgment should have gone to appellant.

Furthermore, from 1906 to 1916, appellant and her predecessor had been in open and notorious possession of the premises, during all of which time they were inclosed by a fence. Prior to that time, and for a period of twenty-nine years at least, they had been in possession and occupancy of the premises, having planted them in orchard, cultivated, and withdrawn the profits therefrom. They had thus met all of the requirements of section 325 of the Code of Civil Procedure, and section 1006 of the Civil Code, except that they had not paid any taxes upon this strip. This appellant excuses upon the ground that no taxes were levied, and hence none were paid by anyone. [10] That failure to pay taxes where none are levied does not defeat a claim of adverse possession there can be no doubt. (*Allen* v. *McKay*, 120 Cal. 332, [52 Pac. 828]; *Oneto* v. *Restano*, 78 Cal. 374, 379, [20 Pac. 743].)

Respondents attack appellant's claim of adverse possession by evidence of certain deeds and mortgages covering the adjoining lots. These were offered in evidence on the theory that they constituted admissions against interest on the part of appellant's predecessor. They were, however, no more than what they purported to be. They did not cover or relate to the premises in dispute, and should have been excluded.

There is also some evidence of statements made by the appellant's predecessor to the effect that there was some dispute or uncertainty as to the ownership of this strip; that he did not work some of this land as he did the other, and that there would be trouble for anyone who took the adjoining land. These conversations merely show that there was doubt in the mind of the occupant as to the character of title claimed to the strip of land in dispute. They do not negative the fact that Elliott was the actual adverse possessor, to the exclusion of all others, for some twenty years before the first conversation is alleged to have taken place.

There is no conflict in the evidence upon the fact of the possession, occupancy, or cultivation. There is, therefore, no evidence to support the finding in this respect against the appellant.

Other points raised in the briefs do not require attention. For the reasons given the judgment is reversed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1919, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the first appellate district, division one, is denied.

We base our denial entirely upon that part of the opinion relating to the matter of adverse possession, and our denial of the application is not to be taken as an indication of our views as to any other part of the opinion.

All the Justices concurred.