[Civ. No. 5768. Third Appellate District.—March 12, 1937.]

CANAL OIL COMPANY (a Corporation), Plaintiff and Respondent, v. NATIONAL OIL COMPANY (a Corporation) et al., Appellants; PETROL CORPORATION (a Corporation), Cross-Defendants and Respondents.

526

Harvey & Johnston, Alfred H. McAdoo and J. W. Heard, Jr., for Appellants.

Hanna & Morton and Edward West for Respondents.

THOMPSON, J.—The National Oil Company and other defendants and cross-complainants have appealed from a judgment quieting title in plaintiff to an oil and gas leasehold interest in a certain right of way of the East Side Canal Company in the southeast quarter of the northeast quarter of the northwest quarter of section 30 south, range 29 east, in Kern County, containing 2.17 acres of land. A canal occupies a portion of this right of way. The appellants hold an oil lease to 40 acres of land adjoining the right of way in dispute in the same section above referred to. The land in which the appellants have an interest is adjacent to, but is described as *"lying west of the right of way* of said East Side Canal". The interest which the appellants claim in the plaintiff's leasehold title above described is that the de-

scription of their property automatically carries their title
to the thread of the stream in the canal.

It is contended the findings and judgment are not supported
by the evidence, for the reason that the plaintiff failed to
trace its title back to its source, or to a common source of
title relied upon by the respective parties to the action. It
is also claimed the court erred in holding that appellants'
title does not extend to the thread of the stream in the canal,
that plaintiff's lease is in violation of an agreement respecting
fair competition for the petroleum industry, which was
adopted for the Pacific coast district, and that the court
abused its discretion in denying appellants' motion for a
continuance of the trial.

The evidence sufficiently supports the findings and judg-
ment quieting title in plaintiff to the leasehold interest in
the right of way over the property above described for the
purpose of developing oil and gas therefrom.

The evidence shows that for many years the East Side
canal has extended in a northwesterly direction through sec-
tion 30, township 30 south, range 29 east, M. D. M., in Kern
County. Apparently the East Side Canal Company owned
merely an easement or right of way upon this property for
the purpose of maintaining the canal. The East Side Canal
Company is not a party to this suit. The portion of the canal
right of way which is involved in this suit is a strip of land
about 75 feet in width by 350 feet in length traversing the
easterly extremity of the southeast quarter of the northeast
quarter of the northwest quarter of said section 30, township
30 south, range 29 east, consisting of 2.17 acres of land.
There is no evidence that the canal extends to the extreme
western edge of the right of way adjacent to which the ap-
pellants' land is situated on the westerly side thereof. The
evidence indicates that James Porter formerly owned all
of the property which is involved in this litigation. While
he was probably the common source of the titles upon which
the respective litigants rely, the evidence does not adequately
establish that fact. That lack of evidence is, however, im-
material in view of our conclusions regarding the other issues
on appeal.

The only instruments which were received in evidence in
support of the plaintiff's title consist of: 1. A deed of con-
veyance from the James Porter Investment Company to C. W.

Bloemer, of the north half of section 30, township 30 south, range 29 east, M. D. B. & M., in Kern County, dated October 24, 1932; 2. An oil and gas lease dated September 20, 1933, for the term of twenty years, from C. W. Bloemer and wife to Fred N. Rumbley and H. F. Owen, covering title for the development of oil in the specific right of way described in the complaint; 3. A modification of this lease, the terms of which are immaterial to this litigation; and 4. An assignment of the last-mentioned lease dated July 8, 1934, from Rumbley and Owen to this plaintiff.

In addition to the foregoing evidence of the plaintiff's record title, two witnesses testified that pursuant to its lease the plaintiff took possession of the property and made improvements thereon consisting of the construction of a foundation for the erecting of a derrick in preparation for the sinking of oil wells. Assuming that the common source of title of the leasehold interests of both parties to the litigation was James Porter, the plaintiff called him as a witness and he testified without objection that he previously conveyed to the James Porter Investment Company, of which he was the president, the property which is involved on this appeal. It is true that Mr. Porter admitted he had previously executed a deed to Hubert A. Dustman in 1913 to a portion of his adjoining property, from which deed the right of way involved in this litigation was exempted. That deed recited that the property conveyed therein lay *"west of the right of way* of the East Side Canal". Mr. Porter also said he conveyed a portion of that tract in 1928 to L. E. Nance, specifically exempting the right of way which is involved in this suit by reciting in that deed that the property conveyed lay "northeasterly of the right of way of the East Side Canal Company", and by further expressly exempting the right of way by the use of the following language: "Excepting therefrom the right of way of the East Side Canal Company." On cross-examination Mr. Porter said that the reason he excluded the right of way from the two deeds last mentioned was because he then thought he did not own the fee to that strip of land, having previously conveyed it to the East Side Canal Company. Evidently he did not intend to convey any title to the right of way to either Dustman or Nance. He specifically refrained from doing so. In explanation of his reason for not conveying title to the right of way to either

Dustman or Nance and of subsequently conveying an interest in that same right of way to Mr. Bloemer, who thereafter conveyed a leasehold interest therein to Rumbley and Owen, who assigned the lease to the plaintiff, Mr. Porter said, ''I had learned that the property belonged to me.'' It is reasonable to infer that he first assumed the deed of the right of way to the East Side Canal Company conveyed all of his title, but that he subsequently learned the company held only an easement for the sole purpose of maintaining thereon a canal, and that the fee in the property still remained in him. In other language, the preceding statements of Mr. Porter with respect to former deeds of conveyance do not amount to a concession that he held no title to the right of way which he transferred to Bloemer.

While it is true that the plaintiff in a suit to quiet title must rely on the strength of his own title, we are satisfied that in the present case the plaintiff furnished *prima facie* evidence of its ownership of the leasehold interest in that portion of the right of way which is in dispute, by showing that it is the owner and holder of an assignment of a lease in the property for the development of oil and gas which was duly executed by a previous owner of the property, and that the plaintiff is also in possession of the property under its lease and has exercised acts of ownership over the property by constructing thereon valuable improvements. (*Morris* v. *Clarkin,* 156 Cal. 16 [103 Pac. 180] ; *Syme* v. *Warden,* 114 Cal. App. 707 [300 Pac. 863].)

Such circumstances present an exception to the general rule that title must be traced to the original source thereof. The possession of a valid conveyance of title from a former record owner thereof, together with occupancy of the property accompanied with acts of ownership such as the construction of valuable improvements thereon, constitutes *prima facie* evidence of ownership of the property which, in the absence of evidence to the contrary, justifies the rendering of a decree quieting title in such claimant.

The appellants contend that since the amendment of section 1006 of the Civil Code in 1915, title to property may not be acquired under any circumstances except when such occupancy has ripened into title by prescription. We are not in accord with that construction of the statute. We are of the opinion that section should be construed to mean that

*mere occupancy of real property, without other evidence of ownership,* may not constitute adequate evidence of ownership "unless such occupancy shall have ripened into title by prescription". That is exactly what the court determined in the case of *Syme* v. *Warden, supra,* with which construction we are in full accord.

■ In the present case there is no substantial evidence to rebut the plaintiff's *prima facie* proof of ownership established by showing that it holds a valid assignment of lease of the property from a former title owner thereof, together with occupancy of the property accompanied with acts of ownership in the nature of the construction of valuable improvements thereon.

The appellants have utterly failed to prove that they have any interest in the right of way. The very instruments upon which they rely for evidence of their title, which are set forth in their cross-complaint, clearly indicate that title to the disputed strip of land was specifically excepted therefrom. Moreover, the appellants did not ask for a decree quieting title in them to any portion of that disputed right of way. They contented themselves with disputing plaintiff's title thereto and by requesting the court to enjoin plaintiff from drilling for oil or gas on that 2.17 acre tract of land.

■ There is no merit in the appellants' contention that the court erred in finding that their title to adjoining property does not automatically extend to the center of the canal. The appellants assert title to the center of the canal according to the principle announced in sections 831 and 1112 of the Civil Code. Section 831 provides:

"An owner of land bounded by a road or street is presumed to own to the center of the way, *but the contrary may be shown.*"

Section 1112 provides:

"A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

In the present case the right of way which was conveyed as an easement for the purpose of maintaining a canal is neither a road, street nor highway. It is not a public way. On the contrary, it is a mere private easement. Nor is the canal a public stream. Moreover, the description of the ap-

pellants' adjoining property does not bound it by the canal or by the right of way. The instruments under which the appellants claim title specifically exempt from the grant's title to the right of way by reciting that the property which is thereby conveyed is located *"west of the right of way* of the East Side Canal'' and *"northeasterly of the right of way* of the East Side Canal Company''. The Nance deed further specifically exempts title to the right of way by describing the property conveyed *"excepting therefrom* the right of way of the East Side Canal Company''. The deeds upon which the appellants rely are not susceptible of being construed so as to convey title to the center of the right of way or to the thread of the stream in the canal. Without objection, Mr. Porter testified that he did not intend to convey title by means of those deeds to any portion of the right of way. The deeds do not purport to do so. By reference to the engineer's diagram showing a survey of the boundaries of that right of way, it appears that the canal does not extend to the extreme border of the right of way. The canal therefore does not become a monument to be considered in determining appellants' title. The deeds upon which they rely do not refer to the canal as a boundary line of their property. Those deeds merely locate the properties which are thereby conveyed as ''west of the *right of way''*, ''northeasterly of the *right of way''* and ''excepting therefrom the *right of way''*. There is no substantial evidence in the record supporting appellants' contention that their titles extend either to the center of the right of way or to the thread of the stream of the canal.

The evidence does not show that the plaintiff was guilty of violating the covenants of an agreement on the part of the Pacific Coast Petroleum Agency contrary to the provisions of the ''Code of Fair Competition for the Petroleum Industry'' or that the appellants are entitled to the injunction prayed for in their cross-complaint, restraining the plaintiff from developing oil from its property, on the equitable ground that plaintiff has not appeared in this suit to quiet title ''with clean hands''. It does not appear in the pleadings or by proof that the appellants were parties to the Pacific Coast Petroleum Agency contract above referred to. Nor was the plaintiff a party to that contract. It is, however asserted that the plaintiff is the *alter ego*

of the Petrol Corporation and the Petrol Producing Corporation, which were cross-defendants in this suit, and which are alleged to have been parties to that agreement. The court found that the plaintiff was not connected with or interested in these last-mentioned corporations. We are directed to no substantial evidence to the contrary. On the theory that the appellants are not authorized to charge plaintiff with violating an agreement to which they were not parties, the court further found:

"That the cross-complainants are without right or interest to claim that these cross-defendants, or any of them, are violating the rules and regulations of any third party, or any statutes or laws of this state, or the Federal Government, and the court specifically finds that such allegations are not founded on fact nor supported by the evidence in this case."

■ The covenant of the agreement of the Pacific Coast Petroleum Agency, the violation of which the appellants complain, was a part of the "Code of Fair Competition for the Petroleum Industry" which was adopted pursuant to the National Industrial Recovery Act. That clause undertook to prohibit the drilling for oil or gas in the Mountain View field of Kern County upon any independent tract containing less than ten acres of land. The Supreme Court of the United States in the case of *Schechter Poultry Corp.* v. *United States of America,* 295 U. S. 495 [55 Sup. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947], held the National Industrial Recovery Act to be unconstitutional and void upon the ground, among others, that it constituted an unlawful delegation of legislative authority. An agreement founded on a void act of Congress is unenforceable and does not afford a basis authorizing an injunction prohibiting the drilling for oil upon property, contrary to the terms thereof.

The court properly found that the alleged violation of the "Code of Fair Competition for the Petroleum Industry" affords the appellants no valid defense to plaintiff's claim of title.

■ The court did not abuse its discretion in refusing to permit a continuance of the cause on application therefor by the appellants in the course of the trial. The cause was tried in Bakersfield on May 23, 1935. On that day the appellants filed an affidavit in support of their motion to postpone the trial, on the ground that it was necessary to their

defense to procure the by-laws and minutes of the plaintiff corporation to show that the by-laws were not regularly adopted; that the officers of the corporation were not authorized to execute the oil and gas lease under which the plaintiff claims title; that the lease was not approved or accepted by it; that the bringing of this action was not authorized by the corporation; and that the plaintiff as the *alter ego* of the Petrol Corporation which signed the agreement with Pacific Coast Petroleum Agency was ''controlled and directed by said Petrols'' corporations, and that plaintiff therefore was barred from recovery on account of a breach of that contract. The affiant averred that appellants took the depositions of the secretary and one other officer of the plaintiff corporation in Los Angeles, which is the residence of the corporation, on May 17th, at which hearing the by-laws and minutes were not produced, and that Mr. McRoberts, one of the attorneys for the plaintiff, then told affiant he was unable to locate the by-laws and minutes and thought they had been returned to the office of James P. Fitzpatrick, the secretary of the corporation, but that the by-laws and minutes would be produced at the trial in Bakersfield, and for the reason that Mr. Fitzpatrick had said the ''officers and directors of said plaintiff corporation were very busy in his office and did not know anything about the present affairs of plaintiff corporation'', the appellants refrained from taking the depositions of the officers of the corporation to procure the use of the by-laws and minutes at the trial of the case.

Section 595 of the Code of Civil Procedure provides that:

''A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing *the materiality of the evidence expected to be obtained; and that due diligence has been used to procure it. . . .* ''

Since counter-affidavits were not filed on the motion for a continuance we must assume the attorney for plaintiff assured the appellants the by-laws and minutes would be produced at the time of the trial in Bakersfield, and that a lack of diligence in procuring the documents might be excused on that account. It does not appear appellants pursued the legal method of securing the documents at the taking of the deposition in Los Angeles or otherwise. They did take the deposition of Fitzpatrick, the secretary of the corporation. By means of a *subpoena duces tecum* pursuant to sec-

tion 1985 of the Code of Civil Procedure they could have required the production of these documents. Apparently no such application was made. An examination of the record indicates that the appellants did not rely greatly on their attack upon plaintiff's title because of any weakness thereof which might be disclosed by the by-laws or minutes.

It is true that liberality should be exercised in granting postponements of trials to obtain the presence of material evidence and to prevent miscarriages of justice, but in the interest of expediting litigation, to prevent injustice and to procure orderly procedure, the granting or denial of a continuance will not be disturbed on appeal except for an abuse of discretion on the part of the trial judge. (*Ross* v. *Thirlwall*, 101 Cal. App. 411, 418 [281 Pac. 714] ; 13 C. J. 123, sec. 4.)

Assuming that the present case shows adequate diligence on the part of the appellants to have warranted the court in granting a continuance, we are of the opinion the by-laws and minutes which they sought to procure were not material and their admission in evidence would in no way disturb the judgment which was rendered. Moreover, there is no affirmative showing that either by-laws or corporation minutes affecting the subject of this litigation ever existed. In response to the inquiry of the court regarding that matter, Mr. West, attorney for the plaintiff, stated: "As far as it is humanly possible (to ascertain), there are no such records. *We know there are no by-laws.*" In their application for a continuance the appellants failed to state the purpose or materiality of the by-laws and minutes, except that their attorney did infer that they expected to show by those instruments that the plaintiff's lease was void for lack of formal acceptance on the part of the corporation. He said: "Delivery includes the act of acceptance. There could be no acceptance of any assignment of this except through the act of the Board of Directors. There never was a meeting of the Board of Directors, therefore there was never any acceptance of this assignment." It is true that the affidavit does state on information and belief that if the by-laws and minutes were produced they would show certain specified facts, such as that the assignment of lease was not duly accepted, that the officers of the corporation were not authorized to execute the lease, and many other things. The

536

record, however, fails to show that the appellants in their motion for a continuance stated that they desired or expected to prove any of those matters, except the above statement with relation to the nonacceptance of the lease. Nor was any statement made regarding the materiality of such evidence. The articles of incorporation of the Canal Oil Company were received in evidence. They fully comply with the requirements of section 290 of the Civil Code, specifically authorizing the buying, selling, mortgaging, hypothecating, leasing and controlling of lands or any interests therein, incident to the owning, holding, regulation or operating of property for the development of oil or gas wells. There is no doubt these provisions of the charter authorized the plaintiff to acquire the lease in question and to operate the property for the production of oil or gas.

It was not necessary for the corporation to accept the leasehold interest in the property by a formal written consent thereto or by the adoption of corporation minutes to that effect. The acceptance of a deed or other instrument of conveyance of real property may be shown by the acts and conduct of the grantee. (18 C. J. 214, sec. 123; 4 Thompson on Real Property, 999, sec. 3917; *Hochstein* v. *Berghauser,* 123 Cal. 681, 686 [56 Pac. 547]; *Beard* v. *Nunn,* 172 La. 155 [133 So. 429].) In the case last cited it is held that a resolution of a board of directors is not necessary to establish acceptance of a deed by a corporation. In 18 Corpus Juris 214, section 123, it is said in regard to the establishing of a presumption of acceptance:

"An acceptance of a deed need not be by formal or express words to that effect, but may be by acts, conduct, or words of the parties showing an intention to accept. So there may be an acceptance by the retention of the deed by the grantee; by an assertion of title by him; by his conveyance or mortgage of the property; by acts of ownership generally in respect to the property; or by bringing a suit on the deed. . . ."

The absence of corporation by-laws at the trial does not furnish ground for a continuance. There is no showing that such by-laws exist. The attorney for plaintiff positively asserts there are no such by-laws in existence. Since the amendment of section 301 of the Civil Code in 1929, the time for the adoption of by-laws of a corporation is not limited.

Prior to 1929 that section required the adoption of by-laws within one month after the filing of the articles of incorporation. Now there is no time limit within which they are required to be adopted. In the absence of the adoption of by-laws the authority to perform acts which may be controlled thereby is invested in the board of directors. (6A Cal. Jur. 305, sec. 159.) In the authority last cited it is said:

"Under the General Corporation Law the making of by-laws is not a duty but a power and an authority. It does not require that any by-laws be made, but states that a corporation 'may' adopt, amend or repeal by-laws."

Nor was it necessary for the plaintiffs to authorize the maintenance of this suit by the formal adoption of a resolution to that effect. A corporation has inherent right to sue, in all cases which relate to its business or property rights, without the adoption of a resolution specifically authorizing the action to be brought. (*Kenton Furnace R. R. & Mfg. Co.* v. *McAlpin,* 5 Fed. 737, 741.)

We are satisfied the court did not abuse its discretion in denying appellants' motion for a continuance of the trial under the circumstances of this case.

The judgment is affirmed.

Pullen, P. J., concurred.