[Civ. No. 19507.   Second Dist., Div. Three.   June 30, 1953.]

FLORENCE LOWE BARNES, Appellant, v. HORACE M. DOBBINS, Respondent.

Florence Lowe Barnes, in pro. per., for Appellant.

Ekdale, Shallenberger & Toner, Arch E. Ekdale, Gordon P. Shallenberger and George E. Toner for Respondent.

SHINN, P. J.—In this action plaintiff attacked the validity of an agreement which she entered into with defendant Dobbins January 3, 1945, claiming she was induced to enter into

it by fraudulent representations of the defendant, and she sought damages in a large amount. By answer defendant alleged that the validity of the agreement had been established by judgment of the District Court of the United States, Southern District of California, Northern Division, rendered July 30, 1951, in an action brought against him by the present plaintiff. Although this judgment was not final at the time of the filing of the answer, it was urged as a ground for abatement of the present action. By supplemental answer it was alleged that the judgment had become final and it was pleaded in bar, and the answer also pleaded other defenses. We shall presently see that the judgment was reversed on appeal to the Circuit Court of Appeal, taken by Dobbins, but this reversal does not affect the conclusions we have reached.

The defense of former adjudication was tried under the provisions of section 579, Code of Civil Procedure, and was sustained. Plaintiff's motion for new trial was denied and she appeals. In both actions plaintiff appeared in propria persona and she has no counsel on the appeal. At the trial there was placed in evidence the transcript of the record on the appeal to the Circuit Court of Appeals. It contains all the proceedings, including the evidence, in the former trial, and all matters for consideration in a disposition of the present appeal. It also shows that there was in evidence an agreement between plaintiff and defendant of January 3, 1945, which plaintiff pleads in her present complaint.

In the first cause of action of the present complaint it was alleged that defendant Dobbins represented to plaintiff that certain real property situated in California had a market value of $105,600, and that purchasers were readily available at that price; that the property in reality was worth only $10,000; plaintiff had been damaged in the sum of $95,600; continuously since the agreement (attached as an exhibit) was made, defendant had been absent from the state. In the second cause of action it was alleged that plaintiff owned two and one-half shares of Landbar Hotel Company which was operated by defendant; defendant falsely and fraudulently represented to plaintiff that said stock had no value; the stock had an actual value of $30,000, and said corporation had in cash and in bank at said time the sum of $120,000; by reason of the false and fraudulent representations plaintiff had been damaged in the sum of $30,000. Damages were sought in the sum of $125,000. A copy of the agreement dated January 3, 1945, was attached to the complaint as an

exhibit; it provided that Dobbins would convey to plaintiff Casa la Roca (a portion of a lot in the county of Los Angeles); Rodela del Sol (the property described in the complaint as having been represented to be of the value of $105,-600); Kelley note of $6,000, secured by a deed of trust, with an unpaid balance of $3,936.07; lots 26 and 27, Addition No. 4, Oneonta Park, Los Angeles County; $22,500 par value United States bonds; 150 shares North Penn. R.R. stock; 240 shares Title Insurance & Trust Company, Los Angeles, stock; 32 shares Union National Bank of Pasadena, warranted by Dobbins to be worth $1,600; three-year note of Horace M. Dobbins in the amount of $17,779.93; cash in the amount of $35,000; 60-day note of Horace M. Dobbins in the amount of $5,000. Florence Lowe Barnes agreed to transfer to Dobbins two and one-half shares of stock of Landbar Hotel Company, Inc., an undivided one-fourth interest in and to certain real property and improvements situated in Philadelphia, being her interest in the property upon which the Broadwood Hotel building was located. Apparently there was an indebtedness of $14,000 against the property Mrs. Barnes was to convey, and it was provided that if she did not pay that indebtedness it would be deducted from the $35,000 Dobbins was to pay in cash. This agreement was performed by the parties.

The action which was decided in the United States District Court had been initiated in Kern County and had been removed to the federal court upon the motion of Dobbins. The complaint in that action alleged that Mrs. Barnes was beneficiary of a 25 per cent interest in a trust created by her grandfather, Richard J. Dobbins, the value of which trust was $500,000; plaintiff had recently discovered that her share of income from the trust in 1940 was $18,750; defendant made a return as a fiduciary for income tax purposes showing plaintiff's share of income to be $18,750; defendant had paid to her as 1940 income only $3,600, for which plaintiff filed a return with the Collector of Internal Revenue; the government assessed additional taxes against her of $2,124 and penalties of $2,000; plaintiff has been harassed thereby, to her damage in the sum of $5,000. It was then alleged that defendant had failed to make an accounting of the trust, and upon information and belief that he had wrongfully paid himself excessive amounts for managing the trust.

The complaint in the former action also contained the following allegations: "VIII. That the Broadwood Hotel in Philadelphia, Pennsylvania, is part of the corpus of said Trust. That in or about January, 1945, plaintiff sold to de-

fendant, her interest in the real property consisting of the said hotel and the land on which it was located. That at the time of said sale, defendant fraudulently concealed from plaintiff that there was the approximate sum of $120,000.00 in cash in the hotel, of which one-fourth belonged to plaintiff. That plaintiff has therefore been further damaged in the sum of $30,000.00.'' The prayer was for an accounting and that plaintiff have judgment against defendant for the following sums: $2,000, representing penalties imposed by the federal government; $30,000, representing plaintiff's interest in said hotel; $5,000 general damages for mental anguish and suffering sustained by plaintiff; for costs of suit and general relief.

The three claims asserted by plaintiff in her complaint in the former action were disposed of as follows: As to the demand for an accounting it was determined that the accounts of Dobbins as trustee had been finally settled by order of the Orphans' Court of Montgomery County, Pennsylvania; as to the claim for an unpaid balance as 1940 income it was determined that there was due Barnes from Dobbins $15,-152.15, for which she was given judgment; as to the claim that plaintiff was the owner of one-fourth of $120,000 in the hands of the Landbar Hotel corporation, it was determined that she had sold to Dobbins her hotel stock, which carried with it all her interest in the company assets.

The crucial question, and the only one here, is whether in the former action plaintiff pleaded and the court determined any question as to the validity of the agreement of January, 1945. The trial court in the present action held that by paragraph VIII of her complaint, quoted above, plaintiff placed in issue the validity of that agreement, claiming that it had been procured from her by fraud, and in sustaining the plea of res judicata the court determined that the validity of the agreement had been established by the former judgment. These conclusions, as we shall see, were in error.

Paragraph VIII of the former complaint, quoted above, is ambiguous. Defendant contends that it was an attack upon the validity of the agreement upon the ground of fraud. The transcript of the record on appeal in the former action shows conclusively that it was not so construed by the parties or by the court during the trial. It was developed in the evidence that plaintiff, pursuant to her agreement, had transferred to defendant two and one-half shares of stock in the

hotel corporation, and a one-fourth interest in the real property upon which the hotel was located. Whenever this phase of the case was mentioned plaintiff insisted that the corporation had cash on hand at the time she sold her stock, that one-fourth of it belonged to her, and that the transfer of the stock did not convey her one-fourth interest in this money. Throughout the case she persisted in her theory, as she put it, that if one sells a business it does not carry with it "your cash drawer." Patiently and repeatedly the court explained that when she sold her stock it carried with it all interest she had in the corporate assets, saying: "I am going to have to hold when you transferred that stock you transferred all the assets of the corporation—regardless of whether it was money in the bank, good will, pillow cases, stock at the bar, whatever it was, you transferred all your interest in the corporation to the defendant by this transfer. Consequently I am going to have to hold, as far as the $120,000.00 is concerned, that went with the stock," and further, "I don't know what your problem is on the other litigation. The only thing I am trying to determine in this case, and the thing I am limiting you to in this case, is whether or not you are entitled to any return of the income the Internal Revenue Agent says you received in 1940." The court told plaintiff that she had not alleged fraud, and plaintiff expressed no dissent. The court stated as set out below.[1]

As a consequence of these rulings plaintiff offered no evidence as to any sum of money the corporation may have had on hand at the time of the agreement, nor did she offer any evidence of any concealment or deception on the part of

---

[1] "One of the things she sets up here is that she was beat out of certain money because of the sale of the hotel property in Pennsylvania. She said there was approximately $120,000.00 cash in the hotel.

"We have before the Court at this time a contract of sale. There is no dispute that the contract of sale was entered into between Mrs. Barnes and Mr. Dobbins for the sale of the hotel property. She does not deny that she made the contract. All she says is, 'There was $120,000.00 in the hotel that I didn't know anything about.' She hasn't alleged in any way that the contract was obtained by duress, menace or fraud. She hasn't said the defendant in any way made any fraudulent misrepresentations to her. This issue could easily have been eliminated from this case if Mrs. Barnes had been represented by counsel; but inasmuch as she wasn't, the matter is before the Court.

"I am going to have to hold there is no evidence in this case, no pleadings in this case, to sustain a finding that there has been any misrepresentation, fraud or undue influence relative to Mrs. Barnes' contract, and that she is bound by that contract.

"Consequently, the only issue before the Court, as far as I am concerned, and I think the only issue before the Court as to which any

Dobbins. Understanding that she had not pleaded fraud in the procurement of the agreement, she did not seek leave to amend her complaint nor abandon her theory that she was seeking only money which she claimed had not passed to defendant in that transaction. Many other statements in the colloquies that took place confirm the understanding prevailing throughout the trial that plaintiff's complaint was not an attack upon the validity of the agreement upon the ground of fraud. The court made findings with relation to the allegations of paragraph VIII of the complaint.[2]

One of the conclusions of law was: "That the contract of January 3, 1945, between the plaintiff and defendant, for the purchase and sale of the Broadwood Hotel and the property located thereon, and the stock of the Landbar Hotel Company is valid, and has been fully executed by all parties." This conclusion was not responsive to the facts found. It was also foreign to the issues as limited by the rulings of the court that the validity of the agreement was not in issue. The judgment did not declare that the agreement was valid.

Plaintiff did not appeal from the former judgment. It was reversed on the appeal of Dobbins upon the ground that

relevant evidence can be introduced, is the issue as to whether or not the defendant paid to Mrs. Barnes the amount of money and the amount of income which the Revenue Agent found she was entitled to, and which was affirmed, evidently, by the Tax Court. . . .

"You also say in your complaint that at the time the hotel was sold that the hotel had $120,000.00 in cash. Well, as I said before, I don't think that is an issue before this Court. I don't think you even plead it, so it couldn't be an issue before this Court. Mrs. Barnes: We never got to it, Judge."

[2] "XV. That the allegations of paragraph VIII of the plaintiff's Complaint are all untrue except that on January 3, 1945, plaintiff sold to the defendant her interest in the real property therein described."

"VII. That on January 3, 1945, the plaintiff, Florence Lowe Barnes, entered into an agreement, whereby she agreed to sell to the defendant, all of her stock in the Landbar Hotel Company, a hotel operating company, operating the Broadwood Hotel, Philadelphia, Pennsylvania, and further agreed to sell to the defendant her one-fourth ($\frac{1}{4}$) undivided interest in and to the buildings and the land upon which the Broadwood Hotel stood; that there is no evidence that said agreement was obtained by duress, menace, fraud or misrepresentation; the Court further finds that the terms of said agreement were executed, and that the plaintiff, Florence Lowe Barnes, conveyed to the defendant, Horace Dobbins, all of her right, title and interest in and to the stock of the Landbar Hotel Company, and the land and buildings known as the Broadwood Hotel."

"VIII. That the agreement of January 3, 1945, referred to in Finding VII, and subsequent conveyances, carrying out the terms thereof, conveyed all of the plaintiff's interest in the assets and liabilities of the Landbar Hotel Company, including cash on hand, if any."

he had received no money for plaintiff's account that had not been paid to her, and the additional ground that his accounting as trustee had been finally settled by order of the Pennsylvania court. The judgment was reversed with instructions to enter judgment for the defendant. No other matters were considered on the appeal.

We do not find any basis in the record for the determination of the trial court that any of the issues here pleaded were adjudicated in the former action. The numerous rulings of the court that plaintiff had not pleaded fraud in the procuring of the agreement, or otherwise challenged its validity, acquiesced in as they were by plaintiff, must be deemed conclusive as to the scope of the issues in the former action. It was because of such rulings plaintiff did not offer any evidence in support of the allegations of paragraph VIII of her complaint. Although the court found that the allegations of that paragraph were untrue, except for the allegation that the agreement had been entered into, this finding was to be read with the further finding that plaintiff had sold her stock in the hotel corporation and that this effected a conveyance of all her interest in the corporation assets. Thus it was merely found that plaintiff retained no interest in any cash that the corporation may have had on hand at the time of the agreement. There was no finding that the corporation had or had not cash on hand. None of the charges of fraud pleaded in the complaint in the present action was pleaded, tried or determined in the former action.

If authority for our conclusions be of interest, it will be found in Freeman on Judgments, fifth edition, volume 2, section 704, page 1485: "A judgment is not conclusive with respect to matters which the court rendering the judgment expressly or impliedly excludes from its determination or consideration, as in case of issues the adjudication of which it holds to be unnecessary, or which it holds to be not involved in the case."

The judgment is reversed. The attempted appeal from the order denying motion for new trial is dismissed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 15, 1953, and respondent's petition for a hearing by the Supreme Court was denied August 27, 1953. Traynor, J., was of the opinion that the petition should be granted.