[Civ. No. 28261.   Second Dist., Div. Three.   Apr. 4, 1966.]

L. C. FAUS, Plaintiff and Appellant, v. EDWIN W. NELSON et al., Defendants and Respondents.

Anson, Gleaves & Larson, John B. Anson and Richard A. Del Guercio for Plaintiff and Appellant.

Tscharner, Tscharner & Meeder and R. L. Tscharner for Defendants and Respondents.

R. D. Sweeney and John L. Mace as Amici Curiae on behalf of Defendants and Respondents.

KAUS, J.—Plaintiff appeals from an adverse judgment in an action to quiet title to a strip of land about 80 feet in width and about 2.938 acres in area. The land in question is an abandoned right-of-way of the Pacific Electric Railway Company ("Pacific Electric"). Plaintiff's title derives from a deed dated February 18, 1955, from Glendora Land Company. Plaintiff's grantor was the original subdivider of the tract through which the right-of-way ran. Defendants trace their title to individual grantees of lots in the tract which border the right-of-way.

The tract map in question was filed and recorded by the Glendora Land Company in 1887. The subject strip is described as "Reservation for S.P.R. Right of Way." The easement to the predecessor in interest of the Pacific Electric, the Los Angeles Inter-Urban Railway Company, was dated June 1, 1906, and recorded June 29, 1906. The predecessors in title of defendants Powell, Nelson and Woods received and recorded title to their lots between 1887 and 1906. Defendants' Shumaker predecessor in interest received and recorded his deed in 1908. All deeds to defendants' lots from Glendora Land Company describe the land conveyed by reference to the map filed in 1887.

In 1953 the City of Glendora filed an action in eminent domain to acquire the subject property to provide off-street parking. Plaintiff, Pacific Electric and defendants or their predecessors in interest were among the defendants in that action. All except plaintiff and Pacific Electric defaulted. A judgment was entered decreeing in effect that the interest acquired by the Pacific Electric by virtue of the 1906 deed survived the abandonment of the strip for railroad purposes in 1951 and that the railroad was the only defendant entitled to be compensated for the proposed taking by the City of Glendora. Faus appealed. The case is reported as *City of Glendora* v. *Faus*, 148 Cal.App.2d 920 [307 P.2d 976]. On appeal it was held that the Pacific Electric acquired nothing but an easement by virtue of the 1906 deed and that its interest in the land was extinguished by the abandonment. In reversing the judgment of the superior court the appellate court carefully avoided any comment regarding Faus' title.[1]

After the reversal in the eminent domain action the City of Glendora abandoned its condemnation of the subject property and then quit-claimed whatever interest it had in the property to Faus.[2]

On these facts the trial court found and concluded: 1. that Faus had no right, title or interest to the former right-of-way; and 2. that each of the defendants owned to the center of the 80-foot strip, in other words, the 40 feet immediately adjoining their respective lots. Judgment was entered accordingly.

It is evident that the reasoning behind the judgment is that defendants' predecessors in interest acquired the fee underlying the railroad right-of-way by virtue of the original deeds from the Glendora Land Company; that after the holding in *City of Glendora* v. *Faus, supra,* which determined that the railroad had abandoned an easement, defendants' title became free of the servitude and that Glendora Land Company, having divested itself of all interest by the deeds to defendants' predecessor had no interest to convey to Faus. The court also must have concluded that defendants are not estopped by reason of the defaults in the eminent domain action.

---

[1]In his answer in the eminent domain action Faus claimed title by virtue of a deed from Glendora Land Company dated January 4, 1952. The deed on which he relied in the present action appears to be a carbon copy of the 1952 deed, the only difference being the date of February 18, 1955, which is inserted in lieu of January 4, 1952. It is immaterial to any issue before us why it was deemed expedient to convey the same interest twice.

[2]Plaintiff places no reliance on the conveyance from the city.

On appeal Faus urges:

1. That sections 831 and 1112 of the Civil Code do not apply to rights-of-way for railroad purposes.[3] 2. That, in any event, the doctrine embodied in these code sections cannot apply where the deed from the original owner and subdivider antedates the creation of the assessment, as is the case with three of the four defendants; and 3. that the defaults in the eminent domain action estop defendants from asserting their alleged interest herein.

We find no merit in plaintiff's points. Plaintiff's argument that sections 831 and 1112 of the Civil Code do not apply to railroad rights-of-way is a red herring. Defendants do not contend that they do. � These code sections are merely the partial codification of a principle which long antedates them and which does not depend on the land being bounded by a road or street (Civ. Code, § 831), highway (Civ. Code, § 1112) or "road, or stream of water not navigable" (Code Civ. Proc., § 2077, subd. 4.) The principle was recognized in this state at least as early as 1863. (*Kittle* v. *Pfeiffer*, 22 Cal. 484, 491.)

The doctrine was most forcefully stated in *Moody* v. *Palmer*, 50 Cal. 31 where the court in a much quoted passage said: "It is well settled that land described in a deed as bounded by a public highway or street, will be considered as extending to the centre of the street or highway, unless it clearly appears that it was intended to make a side line instead of the centre line the boundary. *The highway is a monument,* and in legal contemplation the thread of the highway is the monument, unless a contrary intention clearly appears. That this is the rule is established by a multitude of authorities." (*Ibid.,* p. 36. Italics added.)

There is no reason why a railroad right-of-way cannot serve as a monument in the same fashion as a highway and why the boundary cannot be presumed to be the "thread" of the right-of-way.[4] "In the absence of any qualifying term the designa-

---

[3]Section 831. "An owner of land bounded by a road or street is presumed to own to the center of the way; but the contrary may be shown."

Section 1112. "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

It might be added that Code of Civil Procedure, section 2077, subdivision 4 which sets forth the same rule, applies it also to a "stream of water not navigable."

[4]In *MacGregor* v. *Knowlden*, 102 Cal.App. 42, 49-50 [282 P. 438], a railroad right-of-way was recognized as a monument.

tion in a conveyance of any physical object or monument as a boundary implies the middle or central point of such boundary; as, for example, if the boundary be a road or highway, or a stream, the thread of the road or stream will be intended; if a rock, or a heap of stones, or a tree be the boundary the central point of such tree or rock or heap of stones will be intended. ▮ A private grant is to be interpreted in favor of the grantee, and, if the grantor is the owner of the monument or boundary designated in his grant, his conveyance will be held to extend to the middle line or central point of such monument or boundary." (*Freeman* v. *Bellegarde,* 108 Cal. 179, 184 [41 P. 289, 49 Am.St.Rep. 76].) As far as we have been able to ascertain every common law jurisdiction except Maine (*Stuart* v. *Fox,* 129 Me. 407 [152 A. 413]) and England (*Thompson* v. *Hickman* (Eng.) 1 Ch. 550) which has passed on the problem, has applied the rule pertaining to highways to railroad easements. The cases are collected in 85 A.L.R. 404.

▮ We therefore hold that the rule of construction embodied in sections 831 and 1112 of the Civil Code and section 2077, subdivision 4, of the Code of Civil Procedure applies to railway easements.

Plaintiff's chief reliance for an opposite view is based on *Canal Oil Co.* v. *National Oil Co.,* 19 Cal.App.2d 524 [66 P.2d 197]. In that case the dispute centered on a right-of-way granted to the East Side Canal Company. A portion of that right-of-way was actually occupied by a canal. The defendant operated an oil lease to 40 acres of land adjoining the right of way. Plaintiff claimed the right to drill for oil and gas on the right-of-way through an oil and gas lease specifically describing the right-of-way. This lease had been given to plaintiffs by certain persons to whom the entire real property through which the right-of-way ran had been granted by the James Porter Investment Company. One James Porter, assumed to be the common source of title of plaintiff's and defendant's leasehold interests testified without objection to the following effect: originally he had granted the right-of-way to the East Side Canal Company. Thereafter, apparently thinking that this conveyance divested him of all title, he executed a deed to one Dustman which recited the property conveyed as being "west of the right-of-way of the East Side Canal." He also conveyed a portion to one Nance describing the land as being "northeasterly of the right-of-way of the East Side Canal Company" and expressly exempting the right-of-way from the deed by the following language: "Excepting therefrom the right-of-way of the East Side Canal Company." Thereafter

he conveyed the entire property to the James Porter Investment Company from which, as we have seen, the plaintiff derived its title. Defendant apparently claimed through the Dustman and Nance deeds.

The defendant claimed—as plaintiff in the case at bench would try to make the defendants herein claim—that by virtue of sections 831 and 1112 the Dustman and Nance deeds automatically extended to the center of the canal. This claim was met by the court in the following language: ''In the present case the right of way which was conveyed as an easement for the purpose of maintaining a canal is neither a road, street nor highway. It is not a public way. On the contrary, it is a mere private easement. Nor is the canal a public stream.'' (*Ibid.*, p. 531.) It is this language on which plaintiff relies herein, but he makes it do more work than it was ever intended to. As we read it, all that the court meant to say was that the reliance on the statutes was misplaced. The last sentence ''nor is the canal a public stream'' is unnecessary to the purpose of the court's remarks; also it ignores section 2077, subdivision 4 of the Code of Civil Procedure, which mentions a ''stream of water not navigable'' without confining the language to ''public'' streams, whatever a nonnavigable public stream may be. (See also Civ. Code, § 830.) The National Oil Company never relied on any common law doctrine which might have been of more help to it. In any event, however, it is clear that the decision of the court is not based on any theory emphasizing the distinction between the public character of a highway as opposed to the private nature of a canal easement, for to do so would have been futile. In *Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386 [197 P. 113] the Supreme Court had expressly applied sections 831 and 1112 to conveyances made after the streets in question had either been abandoned as public streets or there had been an authorized withdrawal of the offer of dedication. (*Ibid.*, p. 388.) ''It may likewise well be that the rule would not apply to the conveyance of a lot bounded by a street where the street is described as abandoned. The final question after all is one as to the intention of the parties, and it would seem not unreasonable to consider such a description as one of a lot bounded by what is now private property, although once a street, so that the real boundary was the line of that property. But it is to be noted that the description in this case is a description of the lot as shown by the map, and the map shows the street as existing and not as abandoned, so

that by the description the boundary line of what is conveyed would normally be the center line of the street as shown.

"A somewhat analogous situation is presented where the way by which the property is bounded according to the description is a private way only. The decisions differ as to what is the rule in such a case, but the weight of authority is that the fee to the center line of the way passes. (2 Devlin on Deeds (3d ed.) § 1025a.) Another somewhat analogous situation is where the conveyance is of a lot or tract described by reference to a map, and the map shows the lot or tract as abutting on a road or street, but such road or street has not in fact been dedicated. Here, likewise, it is held that the fee to the center line of what is shown as a street passes. (*Bissell* v. *New York Cent. R.R.*, [23 N.Y. 61] *supra*; *Easton Borough's Appeal*, 81 Pa. St. 85; *Jarstadt* v. *Morgan*, 48 Wis. 245 [4 N.W. 27]; *Freelon* v. *Adrian*, 161 Cal. 13 [118 P. 220].)" (*Ibid.*, p. 394.)

The real basis for the decision in *Canal Oil Co.* v. *National Oil Co.*, becomes clear from a reading of the portion of the opinion which follows immediately after the language relied on by plaintiff. The court simply decided that the trial court was correct in construing the Dustman and Nance deeds as providing true exceptions to the land conveyed,[5] particularly in light of the testimony of Porter received without objection. (cf. *Pao Ch'en Lee* v. *Gregoriou*, 50 Cal.2d 502, 506 [326 P.2d 135].) The wording of the deeds and the testimony of Porter that he did not intend to convey the area covered by the right-of-way because he erroneously thought he had nothing to convey simply overcame the presumptions on which defendant relied.[6]

In view of what has been said above it becomes immediately apparent that plaintiff's second proposition, that the title of

[5]For a collection of authorities explaining the distinction between the "reservation" and an "exception" see *Main* v. *Legnitto*, 230 Cal.App. 2d 667, 677 [41 Cal.Rptr. 223].

[6]As will be more particularly noted hereafter, on a retrial of the eminent domain action, Judge James G. Whyte filed a memorandum opinion in which he discussed the same problems which engage us here. We quote the manner in which he distinguished *Canal Oil Co.* v. *National Oil Co.*, because of the elegance with which he said in a few words what has taken us several pages to express: "*Canal Oil Co.* v. *National Oil Company* 19 C.A. (2d) 524 does not purport to limit the rule to roads or streets only. While it does point out that the right of way in question was "a mere private easement" if that were the complete answer there would be no reason for the Court to emphasize that portion of Section 831 that provides 'but the contrary may be shown' and then illustrate that the deed in question clearly showed a contrary intent and by express language used the side of the canal right of way as the boundary."

defendants' predecessors did not carry to the center of the railroad right-of-way because in three out of the four cases no such right-of-way existed at the time of those deeds, must also fail. Once it is accepted that the original deeds conveyed a fee title to the center of a then existing monument, that is to say the right-of-way as delineated on the subdivision map, it becomes obvious that it is immaterial whether as between the Glendora Land Company and the railroad the easement preceded or followed the deeds. The effect of the words "Reservation for S.P.R. Right of Way" is literal: the subdivider "reserved" the privilege of creating a railroad right-of-way on the premises thus delineated on the map.

Precisely in point is *Brown* v. *Bachelder,* 214 Cal. 753 [7 P.2d 1027], where there never was any creation of a right-of-way, either by dedication and formal acceptance or by use. In that case the original grantor, one Sproul, had designated a certain 60-foot strip as "Spring Street", contemplating that it should be reserved to public use. The land was never opened or improved as a public street but remained enclosed in its original state by a fence, as a part of the land on the north owned by Brown. Nevertheless the Supreme Court held that the trial court was correct in holding that the deed to defendant carried the title to the center of the strip. "In the event of an abandonment or failure to accept a dedication, a strip of land the width of a street can be of little use to the dedicator who has parted with title to all lands on both sides of the street, as was done by the original dedicator in the instant case, and it will not in such circumstances be presumed that he intended to retain the fee as a remnant of his private estate." (*Ibid.,* p. 756.) Ignoring *Brown* v. *Bachelder, supra,* plaintiff relies entirely on *Elliott* v. *McIntosh,* 41 Cal.App. 763 [183 P. 692], a case, which as far as we can see is precisely on all fours with *Brown* v. *Bachelder* and which ordinarily we would deem to be disapproved by implication. Furthermore, in denying a hearing in *Elliott* v. *McIntosh, supra,* the Supreme Court specifically said: "We base our denial entirely upon that part of the opinion relating to the matter of adverse possession, and our denial of the application is not to be taken as an indication of our views as to any other part of the opinion." (*Ibid.,* p. 769.)

Ordinarily this would leave *Elliott* v. *McIntosh* very poor authority indeed, were it not for what appears to be a revival of the doctrine of that case in *MacNicol* v. *East Coalinga etc. Corp.,* 22 Cal.2d 742, 747 [140 P.2d 793]. The facts in *Mac-*

*Nicol* are too complicated to set forth at length, but briefly, there an irregular quarter section of land, barren and unimproved, with no roads or streets surrounding it, was subdivided. Although no offer of dedication of the roads as public highways appears on the map, the county board of supervisors endorsed thereon an acceptance of an assumed dedication arising from the filing of the map. No roads were ever constructed. Thereafter "lots" were sold to the public. Each purchaser executed a drilling contract with the seller and received a right to receive a portion of the net proceeds from the sale of any oil produced from any wells drilled on the tract. The amount of such proceeds was fixed to be a proportionate share of 80 percent of the net profits "in the proportion that the number of lots conveyed . . . bears to the total number of lots in [the] entire tract . . ." *(Ibid.,* p. 745.) It was stipulated that there was never any intention to improve any of the areas designated as roads or streets as such, but that the entire tract was intended to be used for mining purposes only. Holding that sections 831 and 1112 of the Civil Code only apply to streets and highways which have an "actual or prospective existence for the use of the abutting land" the court cited *Elliott* v. *McIntosh, supra,* and upheld the conclusion of the trial court that title to the roads did not extend to the center line of the roads as being "sustained by the record." Justices Traynor and Edmonds dissented briefly, pointing out that previous cases did not make the applicability of section 831 and 1112 depend on whether or not the streets in question had "an actual or prospective existence." The majority, of course, had not intended to overrule *Anderson* v. *Citizens Sav. etc. Co., supra,* and *Brown* v. *Bachelder, supra.* The most that can be said for *MacNicol* v. *East Coalinga etc. Corp., supra,* is that a trial court will be upheld in a finding that no grant to the center of the street was intended where it is stipulated that the grantor never intended to create a road or highway and the grantees never thought that he did. The case is therefore clearly distinguishable from the one at bench in that: 1. not only is the evidence that the Glendora Land Company always intended to reserve the strip for railroad purposes compelling; but 2. the trial court so found.

The case of *Sanchez* v. *Grace M. E. Church,* 114 Cal. 295 [46 P. 2], also relied on by plaintiff, is more than adequately distinguished in *Anderson* v. *Citizens Sav. etc. Co., supra,* and need not detain us.

Finally we turn to the matter of the defaults. Plaintiff cites no authority for his position that the defaults in the eminent domain action preclude defendants from claiming an interest in the property and defendants cite none for their submission that the abandonment of the proceeding after the reversal prevented such preclusion. Amicus curiae, whose brief has otherwise been most helpful, ignores the issue.

There is no doubt that the eminent domain action gave defendants or their predecessors an opportunity to litigate any conflicting claims between them and Faus. They did not take up the gauntlet. The only defendants who appeared were the Pacific Electric Railway Company and Faus who, as noted, relied on his title derived from Glendora Land Company.

Among the several reasons why the defaults in the eminent domain action do not estop defendants from setting up their title in this action, we shall discuss only one, for fear that—unenlightened as we are by argument and citation of authority—we might say something which we would regret on another day.

It is clear that even if the judgment appealed from by Faus could be deemed final as to these defendants and their predecessors, who did not appeal, Faus can derive no comfort from that judgment. The question where the title lay as between Faus and these defendants and their predecessors obviously was not adjudicated in the first trial. The trial court having found that the Pacific Electric Railway Company was the owner, any issues between Faus and the adjoining land owners became moot. As noted, that question was also expressly left open by the District Court of Appeal in *City of Glendora* v. *Faus,* 148 Cal.App.2d 920 [307 P.2d 976]. After the case was retried, Judge James G. Whyte, who had tried it the first time, filed a memorandum opinion and signed and filed findings of fact and conclusions of law to the effect that as between Faus and the adjoining land owners the latter owned the strip. His reasoning and decision were entirely in accord with our views expressed herein. No judgment was ever entered, however, and pursuant to a stipulation the eminent domain action was abandoned as to the parcel in question here.

It is thus obvious that the rights between Faus and the adjoining land owners were never adjudged in the eminent domain action nor, assuming that there ever was a final judgment in that action, was an adjudication concerning such

rights "actually and necessarily included therein or necessary thereto." (Code Civ. Proc., § 1911; *Stark* v. *Coker,* 20 Cal.2d 839, 843 [129 P.2d 390]; *Mitchell* v. *Jones,* 172 Cal.App.2d 580, 586-587 [342 P.2d 503, 77 A.L.R.2d 1404]; *Barnes* v. *Dobbins,* 118 Cal.App.2d 808, 814 [258 P.2d 1112] : " 'A judgment is not conclusive with respect to matters which the court rendering the judgment expressly *or impliedly* excludes from its determination or consideration . . .' ") (Italics added.)

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 1, 1966.