[Civ. No. 23170.   Second Dist., Div. One.   Dec. 23, 1958.]

Estate of MONTAGUE BROOME, Deceased.   ELVIRA BROOME DOOLAN et al., Appellants, v. MARIAN BROOME, Respondent.

Robert Metcalf Jones, Allan, Miller, Groezinger, Keesling & Martin for Appellants.

- Cavalletto, Webster, Mullen & McCaughey for Respondent.

FOURT, J.—This is an appeal from an order approving and settling the report and fourth account of the trustees, which included certain sums of money in said fourth account as "income."

Appellants Elvira Broome Doolan and Ynez Broome Jones are the daughters of decedent and the remaindermen of a testamentary trust, and respondent Marian Broome is the widow of decedent and the beneficiary of the trust income for her lifetime.

The sums of money with which we are concerned in this case consist of the two following items: June 21, 1957 "Recd Fr Herbert W. Naumann ⅓ of ½ Oil Lease Rental Fr Lloyd Corporation Ltd under Lease Dtd 6/15/55 and Terminated 2/13/57 $1,466.66" and "June 21, 1957, Recd Fr Security First Natl Bank Oxnard as Escrow Agent ⅓ of ½ of Rental Recd Fr Union Oil Co under Lease Dtd 6/15/55 & Terminated 2/13/57 $848.00."

These monies were delivered into the possession of the trustees by reason of a deed dated September 19, 1924, executed by decedent and two others as grantors (parties of the first part) and American Beet Sugar Company, a corporation, as grantee (party of the second part) in which was included the following provision: "That the said party of the second part, by acceptance of this deed agrees, and it is mutually agreed between the parties hereto, that the party of the second part, its successors and assigns, shall, respectively, account for and pay to said parties of the first part an amount equivalent to one-half (½) of all the royalties or other compensation which may become payable to or be received by or for the account of said party of the second part, its successors or assigns, respectively, for any oil, gas, minerals or carbonaceous substances, or similar product, which may be developed on said land hereinbefore described as Parcel One, or from leases on said premises for the developed of any of said products above mentioned; it is, however, expressly understood and agreed that neither said party of the second part nor its successors or assigns shall be under any obligation to permit said premises to be drilled for any oil, gas, minerals, carbonaceous substances or similar products, or to give any leases thereon for

any of said purposes; but it is understood and agreed that if the party of the second part, or its successors or assigns, do permit said premises to be drilled for any of said substances or do give any lease or leases for that purpose, the terms upon which said premises shall be drilled or any leases shall be made for any of said purposes, shall be wholly within the discretion of the party of the second part, its successors or assigns.''

The appellants herein filed objections to the inclusion of the monies as ''income,'' contending in the alternative:

(1) that, as an interest in real property in Ventura County, said monies should be distributed to them outright under the provisions of Paragraph Third of decedent's will, which provided as follows: ''THIRD: I give, devise and bequeath to my daughters Ynez Broome Jones and Elvira Doolan, one-half of my interest in real property located in Ventura County, said one-half interest to be divided between them equally, share and share alike, and in addition thereto, I give and bequeath to my said daughters the sum of $1,000.00 each.''; or

(2) that said monies were a portion of the corpus of the trust estate.

It has been agreed that the issues involved in this appeal are the following:

''(1) Whether or not a real property right was excepted or reserved in favor of the grantors in the original deed from which the present monies stem;

''(2) Whether or not a personal right was reserved in favor of the grantors in said deed;

''(3) What disposition should be made of the funds coming into the hands of the trustees in view of the determination made by this Court as to the nature of the right involved.''

The Supreme Court very recently in *Brown* v. *Terra Bella Irr. Dist.*, 51 Cal.2d 33 [330 P.2d 775], clarified the distinctions between exceptions and reservations, stating (at p. 36), ''As a general rule an exception concerns property which is excepted from the grant and does not pass to the grantee, whereas a reservation is a right newly created in favor of the grantor out of property which does pass to the grantee. 'The word ''reserved,'' in a strict technical sense is not synonymous with ''exception.'' The former term is applied to a clause in a deed which creates some right or privilege for the benefit of the grantor in the land described as granted, and withholds it from the operation of the grant, so that the title to the thing passes to the grantee, and the right or privilege concerning it is the only thing retained by the

grantor. The latter term applies to something which constitutes a part of the thing described as granted and which would pass but for the excepting clause, the office of which is to exclude it from the thing described, and the title to the thing excepted remains in the grantor.' (*Van Slyke* v. *Arrowhead etc. Power Co.*, 155 Cal. 675, 679 [102 P. 816].)''

There is nothing in the record before us to indicate who prepared the document in question, and we cannot speculate as to the reasons for the choice of form or terminology. The conveyance does predate the leading case of *Callahan* v. *Martin*, 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871], in which the Supreme Court extensively reviewed the law concerning oil interests in California and elsewhere, and in which the nature of the interest of an assignee to whom an owner of land has transferred a percentage interest in oil rights was defined. In *Callahan* v. *Martin, supra,* the court stated (at p. 115), ''The difficulty experienced in defining with exactitude the nature of the assignee's rights is due in part to the fact that the oil industry is of very recent development, while in this country, by statute and judicial precedent, our classification of property as realty or personalty is based on common-law definitions which crystallized in a time when oil interests were not the subject of judicial cognizance.'' ██ Later in the same opinion (at p. 118), the court stated, ''Giving full weight to this statement of the nature of the landowner's rights in oil and gas, we are of the view that an operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a profit *a prendre,* which is an incorporeal hereditament, and that the assignee of a royalty interest in oil rights under an assignment by the landowner also has an interest or estate in real property in the nature of an incorporeal hereditament.''

It is extremely difficult to ascertain now what the intention of the parties was at the time the document in question was executed. Their intention could have been to create an exception, a reservation, a landowner's nonparticipating royalty interest, or any of a number of other interests in real property, or by contract to create rights in the grantor in consideration for the assumption of certain contingent obligations on the part of the grantee, which obligations would constitute a lien upon the land.

We have attempted to analyze the transaction in the light of the few circumstances known to exist when the bargain was

made. It was apparently contemplated by the parties that the premises would be used for growing sugar beets, and for this use a certain value was placed upon the land which the parties agreed was fair and reasonable. The parties apparently also recognized the possibility that some one might at some indefinite future time strike oil on the land, and they realized that this would increase the value of the property far beyond any use for agricultural purposes.

The conveyance in question appears to us to break across the usual categories, and to partake of certain characteristics pertaining to a variety of classifications of interests. In *Dabney-Johnston Oil Corp.* v. *Walden*, 4 Cal.2d 637 [52 P.2d 237], the Supreme Court recognized the complexities confronting the draftsmen of documents describing interests affecting subsurface fugacious substances by the application of common law rules, and stated (at p. 651), ''It is not surprising, in view of the lack of a definite terminology descriptive of these interests, that those who are dealing in oil interests have difficulty in describing the interest transferred, and that ambiguous and uncertain instruments are presented to the courts for analysis. Such instruments must be construed as a whole in the light of the circumstances under which they were executed and the expressed intent of the parties at that time.''

As a practical matter, the foreseeable possibility of striking oil on the premises in question must have been regarded by the parties as remote rather than probable, because the grantors did not retain for themselves or receive by way of grant any right to participate in making the decision whether the premises should be drilled; nor did they retain for themselves or receive by way of grant any right of control as to the terms upon which the premises might be developed.

The parties must have recognized that they were competent to fix a fair purchase price in the event the land were of value only for use for agricultural purposes. They must have regarded this element as the important one making up the purchase price. It would appear that only under such circumstances would the grantors have been willing to agree to allow the grantee to have complete control of any future developmental possibilities concerning the land, subject only to the condition that any benefit derived therefrom be shared equally with grantors by requiring the grantee to agree to pay to grantors, their successors and assigns an amount equivalent to one-half of whatever might be received for any oil, gas,

minerals or carbonaceous substances or similar products. So viewed, the obligation to pay is in the nature of a perpetual contractual obligation imposed upon the owner of the land by reason of the ownership thereof. Conversely, the contingent right to receive payment is in the nature of a perpetual contract right.

In our opinion, such contract right itself should be regarded as principal, although its value, if any, is measured by the extent of the oil supply. Such right, therefore, must be regarded as a specie of "property subject to depletion" within the meaning of that terminology as used in Civil Code, section 730.12, which provides as follows:

"Where any part of the principal consists of property subject to depletion, such as leaseholds, patents, copyrights and royalty rights, and the trustee or tenant in possession is not under a duty to change the form of the investment of the principal, the full amount of rents, royalties or income from the property shall be income to the tenant; but where the trustee or tenant is under a duty to change the form of the investment, either at once or as soon as a reasonable price, not representing an undue sacrifice of value, may be obtained, then the rents, royalties or income from such property not in excess of 5 per centum per annum of its inventory value as fixed by the appraiser or appraisers regularly appointed by the court, or in default thereof its market value at the time the principal was established, or at its cost where purchased later, shall be deemed income and the remainder principal."

Under the circumstances, in our opinion, it was proper for the testamentary trustee to have allocated such sums of money as the ones in question to "income," and it was proper for the trial court to have ordered distribution thereof to the life tenant.

The order appealed from is affirmed.

White, P. J., and Lillie, J., concurred.