[Civ. No. 21852. First Dist., Div. One. Nov. 17, 1964.]

F. J. MAIN, Plaintiff and Appellant, v. A. L. LEGNITTO et al., Defendants and Respondents.

668

Gardiner, Riede & Elliott, Samuel H. Gardiner and Donald D. Schenk for Plaintiff and Appellant.

Haizlip, Jacobsen & Ring and David D. Ring for Defendants and Respondents.

SULLIVAN, P. J.—In this action to quiet title we are called upon to determine whether a crescent-shaped area shown on a recorded map as a cul-de-sac at the end of a road in the Town of Fairfax was intended by the subdivider to be a "highway" within the meaning of Civil Code section 1112 so as to pass title to the center line thereof.

The basic facts are not in dispute. On September 17, 1913, a subdivision map entitled "Manor," including the property here in controversy, was recorded in the office of the County Recorder of Marin County by Fairfax Development Company, a corporation, the then owner of all the land shown thereon. Thereafter, the above corporation by deed dated September 18, 1913, conveyed to P. K. Brown, defendants' predecessor in title, certain property in the subdivision described in the

deed and shown on the map as Block One (1). All intermediate conveyances in defendants' chain of title made similar reference to the map in their description of the property. The following facsimile of the pertinent portion of the original map received in evidence by the court below will assist in understanding the property involved [see following page].[1]

As can be seen, the map thus prepared and recorded by Fairfax Development Company delineated several strips and parcels of land described as roads. It also contained a declaration that the roads and avenues "marked respectively as: Marin Road, Bothin Road, Pacheco Road, and San Rafael and Olema Road, with exception of strips marked '1' reserved', are intended for public use and are hereby offered for dedication to the public to be used as public roads and highways." Immediately below the foregoing offer of dedication there appeared a certificate of the chairman of the Board of Supervisors of Marin County dated September 15, 1913, certifying that "the said Board has approved the map upon which this certificate is indorsed, and *reject* [*sic*] the offer expressed thereon to dedicate to the public the strips and parcels of land shown thereon as intended for public use, . . ." (Italics added.)

The present litigation focuses upon the crescent-shaped area at the northeasterly end of Marin Road, including the strip marked "1' Strip Reserved."[2] It is the northwesterly half of this area (including the strip) adjacent to defendants' property located in Block 1 which is more precisely the parcel here in controversy.

Plaintiff grounds his claim of title to the entire (and not merely one-half of the) crescent-shaped area upon a judgment and decree quieting title entered on April 25, 1960, in an action brought in the Superior Court of Marin County by plaintiff herein as plaintiff against Fairfax Development Company, a dissolved corporation, and others as defendants in which it was determined that plaintiff was the owner in fee

---

[1]We deem it unnecessary to reproduce declarations and certificates shown on the map [Plaintiff's Exh. 2], some of which are discussed *infra.*

[2]It is to be noted that the area to which plaintiff claims title in fee simple absolute is described in the complaint, findings and judgment as being bound at the northeast end of the crescent by "the Southwesterly boundary line of the Northwestern Pacific Railroad, said Southwesterly railroad line being also the Northeasterly line of a one foot strip marked 'reserved'." It thus appears that the crescent includes the strip. But the strip also serves as an interstice between the railroad right-of-way and the remaining part of the crescent.

simple and that said dissolved corporation "its stockholders and successors including Ruth Holt Borton and Hazel Holt Agnew, are wholly without any interest. . . ." Defendants herein were not parties to that action. Plaintiff's claim of title is thus based on the contention that plaintiff is the successor in interest of the Fairfax Development Company, the original subdivider of the property.

Defendants claim ownership of approximately one-half of the crescent-shaped area lying northwesterly of the center line of Marin Road and base their claim thereto on their ownership of the adjacent property in Block 1 which, they urge, carries with it the ownership of such half of the crescent.

The trial court found and concluded that the crescent-

shaped area was intended by Fairfax Development Company to be a portion of Marin Road, a public highway; that defendants were the owners of all of Block 1 adjoining the crescent-shaped parcel; that in each of the conveyances from Fairfax Development Company and the intermediate grantors to defendants it was the intent of the grantor to, and said grantor did, convey to each successive grantee title in fee simple to the portions of the land adjoining said Block 1 shown on the map as public highways to the center line thereof; and that title in fee simple to all of the crescent-shaped area lying northwesterly of the center line of Marin Road was vested in defendants. Judgment quieting title in defendants was rendered accordingly.[3] This appeal by plaintiff followed.

Plaintiff directs his main attack against the trial court's finding that the Fairfax Development Company intended to convey title in fee simple to the northwesterly half of the crescent. The sole evidence of this intention, argues plaintiff, are the subdivision map and the original deed to defendants' predecessor P. K. Brown which not only fail to support such an intention but clearly show a contrary one. While considerable evidence was introduced at the trial as to the use made of the crescent-shaped area from 1913 up to the present,[4] the parties are in agreement that no extrinsic evidence was received bearing on the subdivider's intent in respect to the map and deed. As plaintiff correctly points out, if P. K. Brown, the first grantee of Block 1 and defendants' predecessor in title, did not take title to the northwesterly half of the crescent by the first deed, there could be no other source from which defendants could trace their title. It will be

---

[3]The trial court also found and concluded that the general public and the Town of Fairfax (not a party to this appeal) owned and possessed a public easement for general street, highway and utility purposes over that portion of the crescent-shaped area lying generally speaking southeasterly of the prolongation of the northwesterly boundary line of Marin Road and that defendants' fee simple title was subject to such easement. Judgment was rendered to the same effect.

[4]The evidence introduced at the trial established that a station building had been erected and maintained on the railroad right-of-way adjacent to the crescent from 1913 until 1941 when the railroad service was abandoned. During those years the public made use of the crescent as a thoroughfare for pedestrians to and from the station as well as a turnaround and a parking area for vehicles. Some years after the railroad right-of-way had been abandoned, around 1954, said right-of-way was converted into a paved county road, Sir Francis Drake Boulevard. Since that time vehicles have been making use of the crescent as a means of access to that road.

recalled that the subdivider's deed to Brown dated September 18, 1913, described the property by reference to the map.[5]

We therefore face the pivotal question whether the map shows on its face that the crescent-shaped area was intended to be a "highway" within the meaning of Civil Code section 1112 so as to pass title to the center line thereof. ▮ Since no extrinsic evidence bearing upon the intent of the subdivider was introduced in the court below, the interpretation of the map and the deed is a question of law and it is our duty to make the final determination in accordance with the applicable principles of law. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 381 [267 P.2d 257]; *McDougall* v. *Palo Alto etc. School Dist.* (1963) 212 Cal.App.2d 422, 431 [28 Cal.Rptr. 37].)[6]

Section 1112 of the Civil Code provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

▮ It is well settled that where land is conveyed by a deed describing the property conveyed as a specifically numbered lot or block as designated on a map, which map also shows such property to be bounded by a street or highway, the grant will be considered as extending to the center of the street or highway, unless it clearly appears that it was intended to make a side line instead of the center line the

___

[5]Said deed received in evidence granted to Brown ''Block One (1) as delineated upon a certain Map entitled 'Manor' filed for record in the office of the County Recorder of the said County of Marin on the 17th day of September 1913, and recorded in Book 4 of Maps at page 55; . . . ''

[6]Both plaintiff and defendants argue that the map is susceptible of only one interpretation of the Fairfax Development Company's intent, and that no extrinsic evidence was necessary to clarify the meaning of the map. Defendants argue that *if* the trial court considered any extrinsic evidence in aid of interpretation of the map, the conclusion of the trial court is supported by the evidence.

There is nothing in the record which reveals that the evidence of subsequent use of the crescent was introduced or admitted for purposes of clarifying any ambiguity in the map as to the corporation's intent to designate the crescent as a street. There is no mention by either party or by the court that the map was ambiguous.

As we read the record, therefore, the trial court did not rule that the map was ambiguous and no extrinsic evidence was introduced to aid in the interpretation of the map. (Cf. *Schmidt* v. *Macco Construction Co.* (1953) 119 Cal.App.2d 717, 730 [260 P.2d 230]; *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 168-169 [20 Cal.Rptr. 747]; *McAllister* v. *Metzger* (1963) 220 Cal.App.2d 692, 703 [33 Cal.Rptr. 879].)

boundary. (*Anderson* v. *Citizens Savings & Trust Co.* (1921) 185 Cal. 386, 393 [197 P. 113]; *Brown* v. *Bachelder* (1932) 214 Cal. 753, 756 [7 P.2d 1027]; *Gramer* v. *City of Sacramento* (1935) 2 Cal.2d 432, 438 [41 P.2d 543]; *Allan* v. *City & County of San Francisco* (1936) 7 Cal.2d 642, 646 [61 P.2d 1175]; *Neff* v. *Ernst* (1957) 48 Cal.2d 628, 635 [311 P.2d 849]; *Los Angeles City High School Dist.* v. *Swensen* (1964) 226 Cal.App.2d 574, 577-578 [38 Cal.Rptr. 214]; see also *Speer* v. *Blasker* (1961) 195 Cal.App.2d 155, 159 [15 Cal.Rptr. 528]; *City of Redlands* v. *Nickerson* (1961) 188 Cal.App.2d 118, 124 [10 Cal.Rptr. 431]; *Loma Vista Investment, Inc.* v. *Roman Catholic Archbishop* (1958) 158 Cal. App.2d 58, 62 [322 P.2d 35]; *Pinsky* v. *Sloat* (1955) 130 Cal. App.2d 579, 582 [279 P.2d 584]; *McIntire* v. *Wasson* (1954) 125 Cal.App.2d 371, 377 [270 P.2d 32]; *City of Los Angeles* v. *Fiske* (1953) 117 Cal.App.2d 167, 170-171 [255 P.2d 445]; *Severo* v. *Pacheco* (1946) 75 Cal.App.2d 30, 35 [170 P.2d 40].) "The highway is a monument, and in legal contemplation the thread of the highway is the monument, unless a contrary intention clearly appears." (*Moody* v. *Palmer* (1875) 50 Cal. 31, 36, quoted in *Anderson* v. *Citizens Savings & Trust Co., supra.*) As the court said in *Anderson,* "Putting it in another way, the fee in the half of the street upon which the lot abuts is in fact a part of the lot, so that a conveyance of the lot conveys the fee in the street as a part of it." (P. 393.) ■ The application of the above rule does not depend on the actual existence or use of the designated areas as streets at the time of the conveyance since "By such a description a street is created as between the grantor and the grantee, regardless of whether or not there is an existing dedication as between the grantor and the public." (*Anderson* v. *Citizens Savings & Trust Co., supra*; *Brown* v. *Bachelder, supra*; *Neff* v. *Ernst, supra*; *McIntire* v. *Wasson, supra* (applied even though the roads on the map were called "parcels" and "private"); *Los Angeles City High School Dist.* v. *Swensen, supra* (applied to areas designated as alleys).)

■ Contrary to plaintiff's claim, it is therefore of no moment that in the instant case the Marin County Board of Supervisors rejected the offer of dedication made by the subdivider on the face of the recorded map. As we have said before, the crucial question is whether the subdivider intended to designate the crescent-shaped area as a street or highway on the map.

An examination of the subdivision map convinces us that, as the trial court found, the subdivider Fairfax Development

Company intended the crescent to be a part of Marin Road. Such area appears on the map as a cul-de-sac at the northeasterly end of the road. There is no line or other divisional notation separating it from the rest of the strip marked "Marin Road." As a cul-de-sac it is an integral part of the road. Indeed the word "ROAD" which follows "MARIN" extends into the crescent. The crescent is not numbered or otherwise designated as a separate parcel of land while all blocks appearing on the map are fully enclosed and separately numbered and all lots (except in Block 1 which is not so subdivided) are also fully enclosed by appropriate lines and separately numbered.

Plaintiff argues that the subdivider intended to dedicate this part of the crescent to the public as a "station ground" or "public commons." The offer of dedication, however, expressly stipulates that the areas in question are "to be used as public roads and highways." Nowhere either on the map itself or in the declaration accompanying it do we find any indication that such area was to be a station ground, a public commons, a park or other similar public place.

Plaintiff also contends that Civil Code section 1112 operates to extend title only over land which is a public highway and actually dedicated as such. Since the area here was rejected, to make a highway out of it, he argues, would require that "an acceptance be implied from an express rejection." In support of this position plaintiff relies on *Elliott* v. *McIntosh* (1919) 41 Cal.App. 763 [183 P. 692], *MacNicol* v. *East Coalinga Oil Fields Corp.* (1943) 22 Cal.2d 742 [140 P.2d 793] and *People* v. *Ocean Shore R.R., Inc.* (1948) 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179]. All three cases are distinguishable from the instant one.

In *Elliott* the only claim of title was based on the theory that conveyance of the adjoining land by lot number with reference to a recorded map carried title to the center line of what appeared on the map as Cedar Street. The street was never accepted by the county and was never opened or used as a public street. The court observed that while an owner of a tract of land by plotting it on a map and designating certain portions as public streets and highways is thereby deemed to have made an offer to dedicate them, he does not by such dedication part with title to the land designated as streets but merely grants the public an easement for highway purposes and upon the failure to accept the offer of dedica-

tion the easement expires and full title reverts to the owner of the adjoining land. It was also noted that "if an owner, having recorded such a map, sells the lots designated thereon by specific reference to such map, he is presumed to have made an irrevocable dedication of the streets, which dedication thereby becomes accepted by use of the public. [Citations.]" (P. 767.) In the cited case, the court found that the land designated as Cedar Street had fully reverted to the owner before any sales were made, that there was no conveyance by the dedicator of the lots delineated on the map which would effectuate an acceptance of the dedication, and that as a consequence no claim could be upheld that title carried to the center of the so-called street. In the case before us, on the contrary, there is no evidence nor did the court find that the offer of dedication was revoked. ▉ While the offer was rejected by the county board of supervisors it became irrevocable on the day after the subdivision map was recorded by the subdivider's conveyance of Block 1 to defendants' predecessor P. K. Brown and was accepted by the subsequent public use of the crescent as a thoroughfare to the train station. (See fn. 4, *ante*.)

Neither of the other two cited cases assist plaintiff. *MacNicol* held section 1112 inapplicable because there was no land "bounded by a highway," the trial court having found on substantial evidence that there was never any intention to open the roads delineated on the subdivision map. *Ocean Shore* did not involve the application of section 1112, the property in controversy being a railroad right-of-way.

▉ We conclude therefore that the Fairfax Development Company intended to designate the crescent as a "highway" on the recorded map and that, since the original deed from such subdivider to defendants' predecessor Brown described the property therein conveyed by reference to the map, under section 1112 and the authorities set forth above such conveyance carried with it all of the crescent-shaped area to the center line thereof. Defendants' ownership of this portion is thus established.

We turn to a subsidiary argument advanced by plaintiff. It is urged alternatively that if we uphold the judgment below (which we do) we should at least modify it by reducing its scope. This argument proceeds on the theory that title to the "1' Strip Reserved" located along the extreme northeasterly border of the crescent remained in the Fairfax Development Company and that, the crescent being a highway,

section 1112 should be made applicable to the strip in the same way as to defendants' land in Block 1. We are asked to conclude that the crescent area "was at most split by a north-south line with the westerly half going to the grantee of . . . [defendants' lot] and the easterly half going to the owner of the retained one foot reserved strip [plaintiff]."

Basically if plaintiff is to prevail in this argument, he must establish that *title* to the strip remained in Fairfax Development Company to which plaintiff looks as the source of his present claim under the judgment quieting title mentioned earlier. The only tangible evidence before us does not shed any light on the problem. The map tells us only that in the area in controversy there is a "1' strip reserved." There is no other express indication as to the nature or purpose of the reservation. Does the above notation on the map mean that the subdivider intended to retain title to the strip or merely to reserve an easement over it? In short, is it an exception or a reservation? Although the terms are frequently used interchangeably and while in a conveyance each detracts from what a grantee would otherwise receive thereby, there are material differences between them. (See generally 15 Cal.Jur.2d 588-589; 26 C.J.S. 993-999; 16 Am.Jur. 607-609.)

■ "The word 'reserved,' in a strict technical sense is not synonymous with 'exception.' The former term is applied to a clause in a deed which creates some right or privilege for the benefit of the grantor in the land described as granted, and withholds it from the operation of the grant, so that the title to the thing passes to the grantee, and the right or privilege concerning it is the only thing retained by the grantor. The latter term applies to something which constitutes a part of the thing described as granted and which would pass but for the excepting clause, the office of which is to exclude it from the thing described, and the title to the thing excepted remains in the grantor." (*Van Slyke* v. *Arrowhead etc. Power Co.* (1909) 155 Cal. 675, 679 [102 P. 816]. In accord: *Brown* v. *Terra Bella Irrigation Dist.* (1958) 51 Cal.2d 33, 36 [330 P.2d 775]; *Estate of Broome* (1958) 166 Cal.App.2d 488, 490-491 [333 P.2d 273]; *Victory Oil Co.* v. *Hancock Oil Co.* (1954) 125 Cal.App.2d 222, 232 [270 P.2d 604].) ■ While there exists a definite and important distinction between the two terms, nevertheless the question whether a particular provision is an exception or a reservation is not conclusively determined by the use of the terms alone but depends on the

real intention of the parties as ascertained from the whole conveyance. (*Coon* v. *Sonoma Magnesite Co.* (1920) 182 Cal. 597, 600-601 [189 P. 271]; *Van Slyke* v. *Arrowhead etc. Power Co., supra,* 155 Cal. 675, 680-681; *Pitcairn* v. *Harkness* (1909) 10 Cal.App. 295, 298 [101 P. 809].) ■ Although a reservation in a grant is to be interpreted in favor of the grantor (Civ. Code, § 1069) ''Such rule must be considered in connection with other provisions of the code in reference to interpretations, the most prominent of which is that all interpretations should be directed toward the ascertainment of the true intent of the parties.'' (*Pitcairn* v. *Harkness, supra,* 10 Cal.App. at p. 298.)

■ As we have said, there is no express indication on the map of the purpose of the one-foot strip. An examination of the map does not clearly disclose whether or not the two arcs of the crescent extend to the southwesterly line of the railroad right-of-way so as to enclose the strip at each end, although in its findings and judgment the trial court appears to have reached the conclusion that the arcs do so extend. (See fn. 2, *ante.*) However we are not persuaded on the record before us that the subdivider intended to retain title to the strip. In the first place, the map shows that all other areas have been delineated as blocks, lots or roads, all of which the subdivider manifestly contemplated disposing of. As we think defendants correctly argue, it would be of no use to the subdivider to retain title to this lone segment of such insignificant dimensions. Obviously therefore the subdivider did not intend to create an exception but apparently had some use or purpose for the strip which was never given clear expression. It will be recalled that in the declaration on the map the subdivider states that ''the strips or parcels of ground delineated upon said Map as *roads and avenues,* and marked respectively as: Marin Road . . . *with exception of strips marked '1' reserved',* are intended for public use. . . .'' (Italics added.) While this statement excludes the one-foot strip from the offer of dedication, it does not of necessity mean that the strip is excluded from the delineation ''roads and avenues.'' So despite the perplexing problem of the *use* for which the strip was reserved, the map furnishes a consistent basis for the conclusion that the strip was an integral part of the crescent and Marin Road. In the second place, the conclusion that the subdivider did not retain title to the strip is supported by the fact that such corporation never conveyed title to the strip to anyone at any time prior to its dissolution.

We are therefore of the opinion that in the light of the use of the term "reserved" and of the other circumstances pointed out by us above, the subdivider did not intend to retain title to the strip but, whatever may have been the unrealized use of the strip concerning which this record is silent, intended it to be a part of the crescent, title to all of which passed to defendants up to the center line thereof.

The judgment is affirmed.

Molinari, J., and Bray, J.,* concurred.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.