[Civ. No. 11482.   Third Dist.   Dec. 11, 1967.]

DORA D. HASKELL, Plaintiff and Respondent, v. RUBY WOOD, Individually and as Executrix, etc., Defendant and Appellant.

———————

*Assigned by the Chairman of the Judicial Council.

Weis & Huckins and Donald E. Huckins for Defendant and Appellant.

Moroney & Prior, Steel & Arostegui and Robert W. Steel for Plaintiff and Respondent.

REGAN, J.—By this action in declaratory relief, plaintiff sought a declaration of the interest of the parties in certain monies, now on deposit, received pursuant to a gas lease of

lands. The trial was before the court, without a jury, on an agreed stipulation of facts.

In 1944 Arthur M. Wood and Ruby F. Wood, father and mother of George J. Wood, loaned the sum of $20,000 to their son, who used this money to purchase land in Sutter County. The loan was to bear interest at 5 percent per annum. In 1946 George J. Wood sold this land and used the funds to purchase an undivided one-half interest in another tract. Title was taken in the name of George J. Wood and Dora D. Wood, his wife, as joint tenants. This purchase made with the knowledge and consent of the parents was understood to be for their account. The remaining one-half interest was purchased by and became the property of Lucille De Jarnatt and does not concern us here.

Thereafter George J. Wood and Dora Wood, his wife, executed a conveyance of a life estate to Arthur M. Wood and Ruby Wood, as follows:

"Whereas, in 1944, or thereabouts, Arthur M. Wood and Ruby Wood, his wife, advanced and loaned to their son, George J. Wood, the sum of Twenty Thousand and No/100 ($20,000.00) Dollars, with the understanding that said loan would bear interest at five percent per annum (5%), which principal sum was used by George J. Wood in purchasing a tract of land in Reclamation District No. 1500, Sutter County, California, and

"Whereas, in 1946, George J. Wood sold said land and in turn purchased as joint tenant with his wife, Dora Wood, the real property hereinbelow described, using the funds previously borrowed from his parents in completing said purchase, all with the knowledge and consent of his parents and with the further understanding that the land last above referred to was purchased for the account of his parents; and now all parties hereto are agreed for the purpose of arranging a proper and equitable plan for the settlement of said loan and vesting title to said land, that Arthur M. Wood and Ruby Wood, his wife, should own the same as a life estate with the remainder over to George J. Wood and Dora Wood, his wife, as joint tenants,

## "EXHIBIT 'A'

"Now, Therefore, in consideration of the cancellation of said loan indebtedness by the Grantees herein named, George J. Wood and Dora Wood, his wife, as Grantors, do hereby grant and convey to Arthur M. Wood and Ruby Wood, his

wife, as Grantees, a life estate in and to an undivided one-half interest in those certain lots, pieces or parcels of land situate in Sutter County, California, described as follows:

" [Description.]

"To Have and To Hold said land and the issues, profits and income thereof for and during the term of the natural lifetime of the grantees herein named, said life estate to continue after the death of one of said life tenants in favor of the survivor until his or her death, and at the death of the last of said life tenants to die, the life estates herein described will terminate.

"George J. Wood and Dora Wood, his wife, continue as owners of the remainder interest in said property as joint tenants.

"The loan indebtedness hereinbefore described is acknowledged by the grantees herein named to have been fully paid and settled by this conveyance."

George Wood died in 1957 and his wife Dora (plaintiff herein) succeeded to his interest in the property. Prior to his death George Wood farmed the property and after his death it was farmed by Dora. Farming leases of the property had been made by defendant Ruby Wood and her late husband, as life tenants, and by Lucille De Jarnatt, the fee owner of the other undivided one-half interest, to plaintiff Dora Haskell and her late husband, and after his death to plaintiff alone. No contentions are being made as to these rental payments.

On January 23, 1958, a document entitled, "Oil and Gas Lease," was executed between Dora D. Wood, Arthur M. Wood and Ruby Wood, as the owners of an undivided one-half interest in the property, and Lucille R. De Jarnatt, as the owner of the other undivided one-half interest, as lessors, and Franco Western Oil Company, as lessee. This lease was subsequently assigned by Franco to A. A. Cameron, as lessee, on or about November 10, 1960.

On the date the property was acquired by plaintiff Dora Haskell and her deceased husband, and at the time the life estate was granted to defendant Ruby Wood and her deceased husband,[1] the land was not prospective oil and gas land. No agreement was made by the lessors at the time of the lease as to how rents or royalties from the lease were to be divided. The language of the lease declared:

"Lessee shall pay Lessors collectively as royalty on oil the value of the agreed share of all oil produced hereunder . . . .

---

[1] Ruby Wood is now the duly appointed, qualified and acting executrix of the estate of Arthur M. Wood, deceased.

". . . For gas produced from the leased land and sold by Lessee . . . Lessee shall pay to Lessors collectively in cash the agreed share. . . ."

Gas wells were subsequently drilled on the leased land and gas produced. Pursuant to the oil and gas lease, certain royalties have been paid. The parties were unable to agree upon the division of these monies and caused such monies to be deposited in an interest-bearing bank account pending a determination of the rights of the parties. As of December 31, 1965, there was on deposit the total sum of $38,485.19, of which $35,956.05 represented deposits of royalties and $2,529.14 accrued interest thereon.

The trial court found that there was no resulting trust, that the Principal and Income Law is not applicable, and that the owner of the reversion is entitled to the gas royalties and the life tenant is entitled to the interest thereon.

In the present case the language used in the "Conveyance of a Life Estate" document is clear and unambiguous in so far as defendant life tenant is entitled to receive the issues, profits and income during her lifetime.

We find no error in the judgment of the court that the sum of money representing royalties paid is the property of plaintiff; that any income from said money is the property of defendant, as is the interest on said money, and upon the death of defendant the money remaining as principal or corpus becomes the property of plaintiff. The words "issues, profits and income," as used in the conveyancing agreement, entitle defendant, the life tenant, only to the income and interest derived from the principal or corpus of the gas royalties.

The relationship of the life tenant and the remainderman, under the circumstances disclosed, is *sui generis* in this state.

In *McCord* v. *Oakland Q. M. Co.* (1883) 64 Cal. 134, 139 [27 P. 863, 49 Am.Rep. 686], it was held that the working of *open mines* by a life tenant is not waste and he may open new pits or galleries in the mine; that the life tenant does not commit waste in taking ore from a mine which is the sole subject of the demise, during his term; and the net profits from the working of the *open mine* may be in the nature of profits from the lawful use thereof rather than the result of the destruction of the inheritance.

### The Unopened Mine Rule

It appears to be well established in the United States that where a mine or well producing rents or royalties was not

open at the time of the death of the owner of the preceding estate of inheritance, or the opening of such mine or well has not been specifically authorized by him, in the absence of a contrary intention manifested by the instrument creating an estate for life or a different result required by a statute governing the subject, rents or royalties derived therefrom are principal, to be conserved for the remainderman, rather than income, i.e., interest derived from such rents or royalties. (Annot., 18 A.L.R.2d 98, 115; Rickets, American Mining Law, § 1007, p. 544; Glassmire, Oil and Gas Leases and Royalties (2d ed.) § 46, pp. 160-161; 3 American Law of Mining, § 16.22, pp. 280-282; see also Rest. of the Law, Property (Introduction and Freehold Interests), § 138 et seq., p. 450 et seq.)

"While neither a life tenant nor the remainderman can singly make a valid oil lease, they can jointly make such a lease. If an oil and gas lease is made by a life tenant . . . in collaboration with the remaindermen . . . the life tenant is entitled only to what constitutes the income yield or income share of the proceeds of the royalties. An oil lease investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors a certain per cent thereof, is in legal effect a sale of a portion of the land, and the proceeds represent the respective interests of the lessors in the premises, so that if the lessors are life tenants and remaindermen, the former are entitled to the enjoyment of the fund—the interest thereon—during life, and at the end of the life estate the corpus should go to the remaindermen. In other words, in an instance in which a life tenant and remainderman jointly open up the land for minerals or oil, or execute a valid lease to another for that purpose, but do not agree how they shall divide among themselves the royalties retained in the lease, they will be divided by the court according to the primary interests of the parties in the land." (33 Am.Jur., Life Estates, Remainders, etc., § 331, p. 836.)

No California case has been found precisely in point. However, it is the law in California that the severance and removal of oil and gas, except in proper cases, is waste. (*Isom v. Rex Crude Oil Co.*, 147 Cal. 659, 661 [82 P. 317].) The unopened mine rule is an application of the common law rule of waste. (Annot., 18 A.L.R. 98, *supra*, at pp. 117-118.) This rule, however, is applicable only when a contrary intention is not manifest by the instrument creating the estate or interests.

## Resulting Trust

█ Defendant, in contending that plaintiff's interest in the land is held in a resulting trust for defendants, relies on the language in the instrument creating the life estate reading: "[A]nd with the further understanding that the land . . . was purchased *for the account* of his parents. . . ." Defendant seems to urge that the transaction thereby created a purchase money resulting trust. Here the language of the documents establishes that the loan was from father to son and there was a conveyance back of a life estate to the father retiring the loan.

█ If a father pays the consideration in a real property purchase and has the conveyance run to his son, there is a rebuttable presumption of a gift (*Altramano* v. *Swan,* 20 Cal. 2d 622, 628 [128 P.2d 353]) Bogert, Trusts and Trustees (2d ed.) § 460, pp. 604-607); and where the grantee of the deed borrows the money, and the lender seeks a resulting trust on account of the loan and the use of the proceeds of the loan to pay for the land, the courts universally deny the lender the benefit of a resulting trust. (Bogert, *op. cit.,* § 455, pp. 536-537.) █ Thus, in California, "[n]o trust results in favor of one who lends money to another with which to buy land." (*Perry* v. *Ross,* 104 Cal. 15, 18 [37 P. 757, 43 Am.St.Rep. 66]; see also *Vogel* v. *Bankers Bldg. Corp.,* 112 Cal.App.2d 160, 168 [245 P.2d 1069].)

In the case before us the loan was satisfied by the grant of the life estate to the mother and father of George, and the instrument so recites. Thus, the agreement on its face negatives any holding of a resulting trust, and the fact that the parties originally declare the land had been purchased "for the account of his parents" had no further effect.

## Royalty Returns as Rent

█ Defendant urges that under the law of this state royalties are rent and the life tenant is entitled to receive them just as she is entitled to receive the rentals from farming leases, citing *Estate of Broome,* 166 Cal.App.2d 488 [333 P.2d 273]; *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 878]; and *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 327].

In *Broome* the appellants were daughters of decedent and the remaindermen of a testamentary trust, the respondent, the widow of decedent was the beneficiary of the trust income for her lifetime. The probate court had approved and settled the

trustees account which included moneys received by reason of a deed executed by decedent to a grantee, the land to be used to raise sugar beets, which contained a proviso that the grantee pay to grantor and his successors a percentage of all royalties which may become payable to the grantee for gas or oil developed on the land. The obligation to make this payment if the grantee did permit oil and gas recovery was in the nature of a perpetual contract obligation imposed on the owner of the land and the contingent right to receive payment was a contract right which was part of the trust. The court held in that case (at page 493):

"In our opinion, such contract right itself should be regarded as principal, although its value, if any, is measured by the extent of the oil supply. Such right, therefore, must be regarded as a specie of 'property subject to depletion' within the meaning of that terminology as used in Civil Code, section 730.12. . . ." The *Broome* case, however, is distinguishable on the facts, for in that case the possibility of utilizing the land to drill for oil was anticipated. Furthermore, *Broome* involved a trust situation and is therefore distinguishable from the instant case.

In the *Callahan* case, *supra*, 3 Cal.2d at page 123, the court enunciates the rule that the royalty return which the lessee renders to his lessor for this estate in the land is rent, or so closely analogous to rent as to partake of the incidents thereof. (See also *Standard Oil Co.* v. *J. P. Mills Organization*, 3 Cal.2d 128, 134-145 [43 P.2d 797].)

In *Dabney-Johnston Oil Corp.* v. *Walden, supra,* 4 Cal.2d at page 651, the court states: "The royalty return which the lessee renders to his lessor is a rent. The right to receive future rents and oil royalties is an incorporeal hereditament, which is an interest in land, and may be the subject of a grant."

To hold that as between lessor and lessee royalties may be characterized as "rent" is not dispositive in this case. In the conveyance creating the life estate there was no conveyance of royalties to defendant as the life tenant, and thus we hold the unopened mine rule applies.

### PRINCIPAL AND INCOME LAW

■ Defendant next contends that, as an alternative, the Principal and Income Law (Civ. Code, § 730 et seq.) is governing.

Professor Bogert assumes that the law is applicable only to

trust. (Bogert, *op. cit.*, § 7, p. 25; § 802, pp. 132-133; § 816, p. 292.) He also notes that the majority of courts, where not controlled by statute, hold that a life tenant is not a trustee for the remainderman, even though he owes the latter duties which are to a certain extent similar to the obligation of a trustee. (Bogert, *op. cit.*, § 27, p. 222.)

The facts of this case negate the applicability of this law. This is not a case involving a trust or other similar fiduciary obligation. Rather, it concerns a family business transaction. The father loaned his son money to purchase land. Land was later purchased, and to satisfy his debt, the son conveyed back to the father a life estate.

We therefore hold that the unopened mine rule is the law of this state and the life tenant is the owner of and entitled to receive all income or interest derived from the monies on deposit or subsequently received pursuant to the oil and gas lease. Upon the termination of the life estate the corpus of the monies, which is the property of the reversioner, shall then be paid to her or to her successors or assigns.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.